No. 2721.

J. J. WILKS v. THE STATE.

1. PRACTICE—DISQUALIFICATION OF A DISTRICT JUDGE.—A judge is disqualified to preside at the trial of a criminal case wherein he has been of counsel either for the State or the accused.

2. SAME—DISTRICT AND COUNTY ATTORNEY.—The county attorney of each county in a judicial district, except the county in which the district attorney resides, is expressly required by law to attend the terms of the county and other inferior courts of his county, and therein to represent the State in all criminal cases under prosecution or examination. The district attorney is not required to aid or assist the county attorney in such prosecutions, and the mere fact that a prosecution carried on by the county attorney may eventuate in the return of an indictment to the district court which may ultimately be prosecuted by the district attorney, will not make such district attorney counsel in the case before the return of the indictment. In this case the examining trial of the accused was prosecuted by a county attorney prior to the election of the Hon. Rufus Hardy to the district judgeship, and while he occupied the office of district attorney. The indictment was found subsequent to his election to the district judgeship, and was presented at a term of court over which he presided. The record further shows that the district judge, while district attorney, had no connection whatever with the prosecution of the examining trial. *Held* that the objection to the qualification of the judge was properly overruled.

3. INDICTMENT—VARIANCE—IDEM SONANS.—In the indictment, in one place, the name of the injured party is spelled "Fauntleroy," and in another "Fontleroy," and the validity of the indictment is attacked upon the ground of variance in stating the name of the injured party. But *held* that the names as set out are *idem sonans*.

4. PRACTICE—CONTINUANCE—DILIGENCE.—The application for continuance failing to show the exercise of legal diligence to secure the absent testimony, and the said absent testimony, viewed in the light of the proof on the trial, appearing not to be probably true, the refusal of the continuance could not constitute cause for new trial.

5. SAME—EVIDENCE—BILL OF EXCEPTION.—Objection to evidence admitted on the trial will not be considered by this court when not presented by proper bill of exception.

6. ASSAULT TO MURDER—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for assault with intent to murder.

APPEAL from the District Court of Navarro. Tried below before the Hon. Rufus Hardy.

The conviction was for an assault with intent to murder one Baylor Fauntleroy, in Navarro county, Texas, on the thirteenth day of September, 1888. The penalty assessed against the appellant was a term of five years in the penitentiary.

Baylor Fauntleroy was the first witness for the State. He testified that, in September, 1888, he was in the employ of the St. Louis, Arkansas and Texas railway as brakeman on the passenger train. When the said train arrived at the depot in Corsicana the defendant and two negro women started to board it. Witness told defendant to wait until the disembarking passengers could get off. The two negro women soon mounted to the platform of the smoking car, into which car the witness directed them to go. Defendant, who meanwhile had mounted the second step of the first class coach, and was holding to the railing, told the women to go into that, the first class car. Witness asked him: "Have you a ticket?" Defendant replied: "Is that any of your business?" Whereupon the witness struck him several blows over the head and face with his fist. While the witness was striking the defendant with his fists a police officer seized defendant, pulled him off the steps and arrested both defendant and witness. Very soon thereafter a second police officer appeared and took charge of witness, and, at witness's request, took him across the platform to the officers of the railroad in the depot building, to enable witness to execute an appearance bond. Having arranged that matter, the witness started back to the train, and just as he stepped out of the office door to the platform the defendant struck him a blow with a knife across the side and back of the neck, inflicting a painful but not a necessarily serious wound.

Cross examined, the witness said that it was the usual custom of railway brakemen to cary arms, but that he was unarmed when he struck defendant, except that, by accident, he had a razor in his pocket. He struck the defendant with his bare first and not with "brass knucks." Witness was not a pugilist, but could strike a severe blow. He owned a pistol at that time, but it was in the possession of his brother at Gatesville, who anticipated serious trouble as the result of a "racket" in which he and witness had participated a few days before. This was the first trouble in which the witness had been involved. The knife with which the defendant struck the witness was a three bladed pocket instrument. The blade with

which the witness was struck was the smaller of the two large blades, the said blade being an inch and a half or two inches long. On his re-examination the witness said that when he left the office to return to the car, after making his bond, he thought the defendant was on his way to jail with the officer who had him in arrest. After receiving the cut, the witness tried to reach the car to get a coupling pin with which to defend himself, and observed the defendant with the open knife in his hand struggling with two police officers, and trying to get to him, witness. It was the duty of the witness as brakeman to see that no person entered the car without a ticket. He did not know whether or not defendant was aware of that fact.

City policeman Pittman, who arrested defendant while Fauntleroy was striking him, corroborated the testimony of Fauntleroy in detail, and, in addition, stated that while City Marshal Cubley had Fauntleroy in the office, making his bond, he, witness, guarded defendant at the side of the office door, and was there with him about fifteen minutes before Fauntleroy came out. Defendant cut Fauntleroy just as the latter stepped out of the office. Witness then seized him, and with the assistance of Cubley subdued and disarmed him. Upon being disarmed the defendant exclaimed: "Revenge I wanted, and revenge I have, if I die for it."

City Marshal Cubley testified, for the State, that he appeared upon the scene just as Pittman was dragging defendant off the car steps. Pittman requested witness to take charge of Fauntleroy; which the witness did. After holding Fauntleroy on the platform five or six minutes, he took him into the office to make bond for his appearance before the recorder's court. Witness produced a blank bond, which was filled out and signed and delivered to him. They were in the office five or six minutes when Fauntleroy, ahead of witness, started out of the office to the train. Just as Fauntleroy stepped out of the office the witness heard, but did not see a blow. He thereupon rushed out and found Pittman struggling with the defendant, who, with an open knife in one hand, was trying to get at Fauntleroy. Witness and Pittman finally subdued the defendant, and witness took from him a pocket knife, the open blade of which was between two and two and a half inches long.

John Roberts testified, for the State, that he was on the platform at the time Fauntleroy was cut by defendant, but did not see the cutting. He saw Fauntleroy standing near the train,

and saw Cubley and Pittman struggling to disarm the defend-
ant. When they secured the knife, the defendant exclaimed:
"Revenge is what I wanted, and revenge is what I have, and
now you can kill me if you want to!"

The testimony of James Craft, for the State, though not as
full, did not vary materially from the witness Pittman as to
what occurred on the platform and at the office door at the time
of the cutting. He could not repeat the exclamation made by
defendant when disarmed. The State closed.

Martha Turner, one of the negro women who were with de-
fendant at the time of the difficulty, testified, for the defense,
that when she and her companion got on the car platform, the
brakeman told them to go into the smoking car. Defendant,
who was then upon the steps of the first class car, told them to
go into that car. The brakeman asked defendant if he had a
ticket. Defendant replied: "That is none of your business,"
whereupon the brakeman struck defendant several blows on
the face and head with his fist, causing the blood to flow. De-
fendant and the brakeman were then arrested. Witness saw
none of the subsequent proceedings.

Green Jamieson, one of the parties named in the defendant's
application for continuance as an absent witness, appeared and
testified for the defense, substantially as did Fauntleroy, for the
State, except that he did not hear the conversation between
Fauntleroy and the defendant and the negro women, which
preceded the difficulty.

The application for continuance was filed January 21, 1889.
For diligence it showed that affiant, on the fourth day of Janu-
ary, 1889, sued out subpœnas for Green Jamieson, R. Hall, J.
Matilla and B. Collins, and placed the same in the hands of the
sheriff for service; that up to the day of the filing of this appli-
cation, he verily believed all of said witnesses resided in Na-
varro county, but that on this day he was informed that Hall
was a resident of Dallas county, Matilla, as shown by the offi-
cer's return, a resident of McLennan county, and Collins of
Limestone county. In this connection the application prayed
for attachments to Dallas, McLennan and Limestone counties
for the said witnesses. The application then stated that the
affiant expected to prove by the said witnesses that, just prior
to the alleged assault, he was beaten over the head most brutally
and mercilessly by Fauntleroy, who in beating him used a pair
of "brass knucks"; that the said beating was administered by

Fauntleroy without provocation, and that the said alleged as-sault was committed immediately after the said beating ad-ministered by Fauntleroy, and while Fauntleroy was in an attitude to continue said beating.

*R. B. Molloy* and *Croft, Blanding & Croft,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.  Appellant insists that the judg-ment should be reversed because the trial judge was disquali-fied from trying the case.  This point was made in the court below, and the facts pertaining to the question are matters of record.  From these it appears that at the time the offense was committed the Honorable Rufus Hardy, who, as judge of the dis-trict court (recently elected), presided at the trial, was the dis-trict attorney of his district, one of the counties being Navarro, the county in which the offense here prosecuted was committed. After its commission appellant was arrested and tried before an examining court, at which trial he was prosecuted by the county attorney.  This was before Judge Hardy's election as district judge.  After his election this indictment was found and presented in his court.  It is shown by the bill of excep-tions that he not only did not participate in the prosecution of the case before the examining court, but that in fact he never had heard of the case or had any connection whatever with it until, as district judge, he called the case upon the docket for trial.

A judge is inhibited from sitting in a criminal case when he has been of counsel for the State or the accused.  (Const., art. 5, sec. 11; Code Crim. Proc., art. 569; Thompson v. The State, 9 Texas Ct. App., 649; Cock v. The State, 8 Texas Ct. App., 659; Railroad v. Ryan, 44 Texas, 426.)

It is only in counties where the district attorney resides that the county attorney does not perform the usual functions of his office.  (Rev. Stats., art. 247.)  In all other counties where there is a county attorney it is made his duty expressly "to attend the terms of county and other inferior courts of their respec-tive counties, and to represent the State in all criminal cases under prosecution or examination in such courts," etc.  (Rev. Stats., arts. 241, 247a, Sayles.)  The district attorney is not re-quired to aid or assist in such prosecution; and the fact that

the prosecution may eventuate in the finding of an indictment which he may ultimately have to prosecute in the district court can not and will not make him counsel in the case until the indictment has been found. In this case, the judge having had no connection with the case in any manner whatever as counsel, was not disqualified from trying it.

Defendant's motion to quash the indictment was based upon a variance in the mode of spelling the name of the assaulted party and the party intended to be killed—the difference being that in one instance it was spelled Fauntleroy and in the other Fontleroy. If there was any such difference, then it amounted to nothing because the two names are *idem sonans.*

No error is made apparent on account of the overruling of defendant's application for a continuance. Sufficient diligence is not shown, and if it had been then we think it apparent from the trial evidence that the proposed testimony is not probably true.

Objections to the admission of evidence were not saved by bills of exception, and consequently are not entitled to be considered. The charge of the court was a full and fair presentation of law to all the legitimate phases arising upon the evidence, and there was no error in refusing the special requested instructions.

In our opinion the evidence is amply sufficient to support the verdict and judgment. The judgment is affirmed.

*Affirmed.*