13853

FULMER v. LONDON, LIVERPOOL & GLOBE FIRE INS. CO. *ET AL.*

(174 S. E., 466)

Before RICE, J., Orangeburg, October, 1932.

*Messrs. W. C. Wolfe, E. H. Blackmon* and *G. K. Rich,* for appellant,

*Messrs. Jos. L. Nettles, A. T. Smythe* and *Lide & Felder*, for respondents,

May 16, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought against the named defendants and Savannah Fire Insurance Company; by consent the Savannah Fire Insurance Company was eliminated from the action.

The amended complaint alleges that B. C. Boland of Springfield, S. C., was the agent of the defendants; that on October 19, 1931, the defendants by their said agent, acting through plaintiff's husband, as her agent, made an oral agreement with plaintiff to insure her household and kitchen furniture in the sum of $3,000.00 for one year thereafter. That the defendants became jointly and severally bound by such agreement; that the usual premium was to be paid when the agent sent a bill therefor; but that before the policy or policies could be written, or the bill for premium sent plaintiff, the property was destroyed by fire. The defendants deny liability and refuse payment.

For answer: The defendants admit their corporate capacity and that B. C. Boland was, at the times mentioned, their agent at Springfield, and that they refuse to pay the claims of plaintiff. They deny all the other allegations of the complaint.

The case was heard by Judge Rice and a jury in the Court of Common Pleas for Orangeburg County. At the conclusion of all the testimony his Honor, on motion, and after hearing argument directed a verdict for the defendants. The appeal is from that order.

There are five exceptions, but all of them turn upon alleged error in granting the motion for directed verdict, the charged errors being that there was proof sufficient to take

the case to the jury on the questions whether there was a valid oral contract to insure; what were the terms of the contract; whether the contract was with one or more of the defendants; whether Boland acted within the scope of his agency; whether there was a loss, and what was the amount thereof.

Appellant's counsel in their brief cite authorities to sustain their position that an oral contract to insure is binding, and that a principal, disclosed or undisclosed, is bound by the acts of his agent done within the scope of his authority.

These are fundamental principles of law and are admitted. They are settled in this jurisdiction by the case of *Stickley v. Mobile Ins. Co.*, 37 S. C., 56, 16 S. E., 280, 838. But it does not follow that such oral contract to insure differs from any other contract in the requirements necessary to make it valid. There must be a meeting of the minds of the contracting parties in regard to the essential terms, viz., of the consideration, time, etc.

Our own authorities contain little on the subject of oral contracts to insure, but the matter has been very fully treated in the reports of other jurisdictions. In the annotation to the case of *Massachusetts Bonding & Insurance Company v. Vance* (an Oklahoma case), 15 A. L. R., 981, is found a collection of cases bearing on the subject:

"In *Commercial F. Ins. Co. v. Morris* (1894), 105 Ala., 498, 18 So., 34, where the validity of oral agreements for insurance was involved. the court said: 'The authorities agree that before a contract of insurance, or to insure, is binding, all the essential elements and terms of the contract must be understood and mutually assented to. A mere expression of a desire by one intending to procure insurance, or a proposition made to an insurance agent to insure property, and an assent or acceptance by the agent to insure, without more, would not amount to a contract of insurance or an agreement to insure. The subject-matter, period, rate to be paid, and amount of insurance, and perhaps other ele-

ments, must be agreed upon, expressly or by implication, before there can be an absolute, binding agreement between the parties. * * * '

"Thus, a parol contract of insurance, made with an agent representing several companies, is invalid where no specific company is designated before a loss occurs. *Grimes v. Virginia F. & M. Ins. Co.* (Tex. Civ. App. 1920), 218 S. W., 810.

"And where one is agent for several insurance companies, and, at the time an application is made for him to insure, nothing is said as to the company, but he simply states that he will call the property insured, it cannot be said that a contract of insurance is effected with one of the companies represented by the agent. *Kleis v. Niagara F. Ins. Co.* (1898), 117 Mich., 469, 76 N. W., 155.

"And lack of identity of parties was held, in *Hartford F. Ins. Co. v. Trimble* (1904), 117 Ky., 583, 78 S. W., 462, to render invalid an attempted oral contract of insurance with an agent representing two companies, there having been nothing said as to which company the risk should be placed with.

"And the minds of the parties cannot be said to have met, so as to establish an oral contract of insurance, where no company was agreed upon, and there was only an understanding that the agent would see what he could do respecting the matter, and would notify the applicant later. *John R. Davis Lumber Co. v. Scottish Union & Nat. Ins. Co.* (1896), 94 Wis., 472, 69 N. W., 156. * * *

"And a declaration by an insurance agent that it is 'all right; I will do so,—I will cover it,' made during a conversation relative to the issuance of a fire insurance policy, without any understanding as to when the risk should attach, or the duration of it, fails to establish a complete contract. *Cleveland Oil Co. v. Norwich Ins. Co.* (1898), 34 Or., 228, 55 P., 435."

In the annotation to the case of *Green v. Hartford F. Ins. Co.*, 157 Miss., 316, 128 So., 107, reported in 69 A. L.

R., 554, are numerous authorities from various jurisdictions to the same effect as those above cited.

Let us examine the record to see if there is evidence to support an oral agreement to insure plaintiff's property. The negotiations were conducted by her husband. An epitome of his testimony is thus stated: "My wife had authorized me to take out some insurance on her household goods. I went to Springfield to deposit some money in the bank where Mr. Boland is employed; went on back to his insurance office. I told him I wanted to take out some insurance on my wife's furniture in Neeses, that I wanted to take it out for my wife, Mrs. Julia J. Fulmer. She owned this household furniture. I told him I wanted $3,000.00. He said: 'All right it is covered, I will attend to that.' He told me I was covered, I was protected. I walked out. Nothing was said about paying the premium. Boland had been writing insurance for me. Policy I did not get from Mr. Boland I had asked for for my wife." Referring to other insurance which he said he had taken out with Boland, he said: "He mailed the policy to me three or four months after I took out the insurance, I paid it two or three months afterwards. * * * After the fire I went to see Mr. Boland on Sunday night after the fire. I went to see him about 8 o'clock. Told him I wanted the policy over my wife's household goods for the insurance that he gave me. Told him the household goods were destroyed the night before. He said: 'Ain't that hell; if I ain't messed myself up. I put the binder through (some company) but was busy in the bank and neglected it, I intended doing it on Saturday; I was just as busy as I could be and forgot it. I intended doing it Monday.' He said he had put the binder through some company; that there is but one thing to do. I asked him to give me a written statement for that insurance that he gave me over my wife's household furniture. He said he could not do it because he did not think his companies were responsible for his negligence. He said to my father: 'Last

Monday I gave him $3,000 insurance over his wife's household goods, and put a binder through the first company. (That company declined it.) I intended to put it through another company, but was so busy in the bank, I forgot it.'"

On cross examination Fulmer said: "He did not give me my insurance I claim he did not protect me. Yes, sir; his agency should have protected me. He told me I was protected as a matter of fact. He says: 'You are protected.' He did not furnish me the policy I asked for. He did not give me a policy. I do not know today what company he put in my policy with, if any company. I cannot name a single company today who insured those household goods. * * * I did not know at that time what fire insurance companies Mr. Boland was agent for; not all of them. I knew one he represented, Liverpool, London & Globe. I did not have an understanding as to what company he was going to insure me in. I left that entirely with him what company he was to put me in. I understood he was going to put me in one company. I did not know which one it was. That part of it was not mentioned. He never mentioned it, I never mentioned it. My understanding was he was going to put me in one company."

B. C. Boland, the agent of the defendants, testified that when Mr. Fulmer approached him with the proposal for insurance he declined to entertain it, and denies the testimony of Fulmer thereabout.

But disregarding all that Boland says, it is patent from the testimony of Fulmer himself that there was never a valid oral agreement to insure. His own statement discloses that the alleged contract is wholly indefinite as to the premium to be paid, the period when the policy was to begin and end, and the company with which the insurance was to be placed.

Four companies were sued at first; for some reason not stated in the record, one was dropped. But Mr. Fulmer testified that Mr. Boland said he was going to put it in one company.

"A parol contract of insurance, made with an agent representing several companies, is invalid where no specific company is designated before a loss occurs. *Grimes v. Va. F. & M. Ins. Co., supra.*" 15 A. L. R., 981 note.

The trial Judge was justified in directing a verdict for defendants in this case.

The judgment is affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.