MILLER, APPELLANT, v. AETNA LIFE INSURANCE CO., RESPONDENT.

(No. 7,465.)

(Submitted December 6, 1935. Decided January 7, 1936.)

[53 Pac. (2d) 704.]

*Mr. Lawrence E. Gaughan, Mr. H. C. Crippen* and *Mr. H. C. Crippen, Jr.,* for appellant, submitted an original and a reply brief; *Mr. H. C. Crippen, Jr.,* argued the cause orally.

214

*Mr. M. J. Lamb,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action arising out of the Workmen's Compensation Act. Albert Miller, the claimant, appellant here, who will hereafter be referred to as the plaintiff, was injured while in the employ of the Love-Sinclair Service, Inc., a corporation conducting a garage and a service station at Billings. January 1, 1932, the claimant, who was the night man at the garage, while removing a casing from the rim of an automobile, dropped the heavy rim on his foot, which resulted in the injury upon which the claim is based. Dr. Farr, of Billings, was called to attend Miller and continued to treat him until in October, 1932. During the interim Miller was admitted for treatment at the Legion Hospital at Fort Harrison, where he remained about ten weeks, and at the end of that time was discharged and advised that his injury did not respond to treatment. Subsequent to that Miller went to Denver and became a patient of a physician con-

nected with the Veterans' Hospital at that place. That physician was reputed to be an "expert" in afflictions such as Miller was suffering from. After taking treatment there for some time, Miller was advised by the Denver physician that his injury was incurable. Dr. Farr testified that the injury to the foot progressed until it had destroyed the usefulness of that member and in addition had brought about an aggravated form of nervousness. The plaintiff is unable to wear his shoe, can get around on crutches, but, according to the testimony, is totally disabled. He has a wife and four minor children. Plaintiff had worked at the same place for more than a year just prior to the accident at $20 per week.

Miller, through his attorneys, filed his claim with the Industrial Accident Board as an employee of the Love-Sinclair Service, Inc., and on May 25, 1933, a hearing was had by the board on his claim. At such hearing both the parties were represented by attorneys. At the conclusion of the hearing the board denied Miller's petition for compensation and dismissed the proceeding "on the ground that his employer at the time of the alleged accident, namely, the Love-Sinclair Service, Incorporated, was not enrolled under the Workmen's Compensation Act of Montana." From this decision the plaintiff appealed to the district court of Yellowstone county, where additional evidence was taken, and the court there, in addition to the findings of the board, amplified such findings by an additional finding that the "binder policy" issued to the employer by the defendant, hereafter adverted to, was never filed with the board. Judgment was entered in accordance with such findings. This appeal is from the judgment.

Plaintiff assigns eighteen specifications of error, but we think the merits of the action will be determined by the solution of the two questions, first, Was the employer enrolled under the Workmen's Compensation Act (Rev. Codes 1921, sec. 2816 et seq., as amended) with the board; and, second, Was the "binder policy" in force when plaintiff was injured, making defendant liable thereunder?

It appears that a garage and service station had been operated at the place where plaintiff was injured for several years, first by J. B. McTavish under the corporate name of John B. McTavish Flint Motor Company, and later as McTavish Motor Company. About 1930 S. J. Love appears to have become interested in the concern, and the name was changed to Love-McTavish Service, Inc., with Love as manager. The record is not definite in these matters and it is not important except to give a reasonably clear conception of the situation. It appears that Love ultimately acquired complete ownership of the business and took preliminary steps to incorporate under the name of Love Service, Inc., but such arrangements were never consummated. Love, however, went so far as to have articles of incorporation prepared, and notified the board that a corporation under the new name mentioned above had succeeded to the business and desired to be enrolled under the Workmen's Compensation Act. Later, at some indefinite date, ''Sinclair'' became interested in the concern, and in May, 1931, Sinclair bought out Love's interest and Love retired from the management of the company. Clifford Walker, deputy secretary of state, testified that Love & McTavish Service, Inc., was chartered May 12, 1930, and that Love-Sinclair Service, Inc., filed articles in his office May 27, 1931, as the successor of Love & McTavish Service, Inc. Plaintiff filed his claim for compensation as an employee of Love-Sinclair Service, Inc.

The essential thing here is to determine the standing of Love-Sinclair Service, Inc., with the board. The record of the board, as certified to by the chairman of the board, shows that the McTavish Motor Company's application to be enrolled under the Workmen's Compensation Act was approved by the board April 24, 1926; that ''thereafter'' J. D. McTavish gave notice that ''McTavish Motor Company and/or Love-McTavish Service * * * had succeeded as employers the McTavish Motor Company and desired to operate under the Workmen's Compensation Act. Approval of this was done on May 4, 1930. * * * September 10, 1930, the board received a 'paper' for filing

which read as follows:'' For the sake of brevity, the paper referred to is not set out here in full, but the substance of it as shown by the record was that Love Service, Inc., had succeeded to McTavish Motor Company, assumed its obligations and desired to enroll under the Workmen's Compensation Act. This notice was signed by S. J. Love and dated August 20, 1930. Accompanying the paper was the affidavit of S. J. Love that proper notices had been posted in the garage of the place of business. The record does not show what, if any, action was taken by the board to determine whether Love Service, Inc., had done all things necessary to qualify under the Act or not. The board, in its findings of fact, after reciting what the records of the board show relative to the application of Love Service, Inc., to be enrolled, says: "This would have been according to law if Love Service was a corporation, and if in addition it had filed a policy with the Industrial Accident Board to protect its employees.'' Why the board did not investigate the matter and see that the employees were protected does not appear. The fact that Love Service was not incorporated was no reason why its employees should be deprived of the protection provided by the Act. (Sec. 2862, Rev. Codes 1921, as amended by Laws 1925, Chap. 121, sec. 2.) We do not question the board's authority to do all things necessary under the Act to assure the employees the protection the Act intends to provide for them. While sections 3014, 3015, 3027 and 3028 specifically apply to the board's duty to see that places where workmen are employed are made and kept reasonably safe, we do not think it may be said that the board's activities in behalf of the workmen shall end there. Certainly, the specific measures directed to be taken in behalf of the workmen enjoined by the sections mentioned are no more vital to the workmen's welfare or the welfare of their families than the compensation provided by the Act for injuries sustained. Section 2843, Revised Codes 1921, provides in part as follows: "After having once elected to be bound by one or the other of the compensation plans provided in this Act, such employer shall be bound by such election for said first fiscal year and each succeeding fiscal year, unless such employer shall,

not less than thirty or more than sixty days prior to the end of any fiscal year, elect not to be bound by either of such compensation plans, after the expiration of said fiscal year, or unless he shall elect to be bound for the succeeding fiscal year by a different compensation plan than the one by which he is then governed. Such election must be made in the manner provided for in reference to the first election of such employer under this Act.''

McTavish Motor Company was enrolled under the Act. Its successor attempted to enroll. This was sufficient to require such investigation as would have revealed the true situation. The board was not advised that the employer elected not to be bound. Such advice as the board had was to the contrary. The business carried on at the place where plaintiff was injured seems to have been conducted under various names to suit the manager who was in charge at the particular time, but according to the testimony of the deputy secretary of state, Love & McTavish Service, Inc., and Love-Sinclair Service, Inc., were the only ones shown by his records to have been incorporated, the latter succeeding the former. The chairman of the board certifies that the records in his office show that ''the Love-Sinclair Service, Incorporated, has never, at any time, elected to be bound by the Workmen's Compensation Act.''

Some emphasis appears to have been placed on the fact that ■ a hyphen or comma, or the character ''&'' was sometimes used in the names of the various corporations instead of the literally correct name. Such irregularities will not be permitted to affect the merits of the action here. So long as the name is sufficient to identify the place of business and the employer, we will hold that the name is sufficient. It is the identity of the particular business and the employer that are essential under the Act. In the case of *Mahowald* v. *Thompson-Starrett Co.*, 134 Minn. 113, 158 N. W. 913, it was held that such irregularities in names are immaterial. (See, also, *Wilks* v. *State*, 27 Tex. App. 381, 11 S. W. 415.)

We think the board's finding that its records do not show ■ that Love-Sinclair Service, Inc., ever elected to be bound

by the Workmen's Compensation Act is erroneous. First, because it is shown in the record here that Love-Sinclair Service, Inc., succeeded Love & McTavish, Inc., and that the latter corporation was enrolled, and we think the Act imposes the duty upon the board to determine in such circumstances whether a succeeding corporation has properly enrolled under the Act or not, and, if not, to see that the notices in the place of business are removed in order that employees be not misled as to their protection; second, that the board's records further show and defendant's counsel admit that from May, 1931, to November 7, 1931, there was on file with the board a policy issued by the defendant relative to which the following exhibit appears in the record:

"Aetna Life Insurance Company
 Billings—Feb. 16, 1932
 Town—Date of Audit

H. O. Pol. No. ——
Agency No. JAP 4077753
Expiry 6/7/31 to 1/5/32
Agency Walco No. 160
Prem. Basis ——

Assured
 Love Sinclair Service Station

| Period Ending 1931 | Garage All others | Class of Business Clerical | Gr. Oil Station | Period Ending Misc. | Class of Business all others |
|---|---|---|---|---|---|
| | | | | Brought forward | |
| 1. June 6–30 | 415.75 | 308.50 | | 28 | |
| 2. July | 395.58 | 311 .. | 118.03 | 28 | |
| 3. Aug. | 502.74 | 292. | 185.64 | 29 | 55.55 |
| 4. Sept. | 508.46 | 323.33 | | 30 | |
| 5. Oct. | 415.66 | 272. | | 31 | |
| 6. Nov. | 282.35 | 254. | | 32 | |
| 7. Dec. | 370.98 | 308.00 | | 33 | |
| 8. Jan. 1–5 | 78.00 | 35.00 | | 34 | |
| | 2969.52 | 2123.83 | 303.67 | | 55.55 |

2969.52
2123.83
 303.67
 55.55
─────
5452.57

Questions to
be Answered by

1. What employees, if any, are included ——
2. What other classes of work done by assured ——
 —— Are sub-contractors included ——
3. Are drivers, chauffeurs and their helpers included
 —— Hired teams and autos?
4. From what books were figures obtained Check reg.
 Verified by ——
5. Condition of books —— Have you divided wages
 by states ——

"I hereby Certify that the above is a true and correct statement of all wages expended under the above Policy as shown by the assured's books which I have personally examined.

——————————— Auditor.

"Date and Statement to be filled in by Assured Town ——— Date signed.

"$\frac{I}{We}$ hereby certify that the full amount of wages including overtime and allowances earned by all persons in $\frac{my}{our}$ employ included in the above policy applied during the —— months ending —— was $5452.57.

"———————————— Assured

"By ——————————."

This exhibit clearly shows that a policy was deposited with the board presumably insuring Love-Sinclair Service station, and we think it was sufficient notice to the board that a concern of that name, or similar name, desired to enroll under the Workmen's Compensation Act, and if the board were in doubt about the matter it was its duty to make such investigation as was necessary to remove that doubt.

This court said in *Lindblom* v. *Employers' Liability Assurance Corporation,* 88 Mont. 488, 295 Pac. 1007, 1010: "The Workmen's Compensation Act was enacted for the benefit of the employee." The correctness of this conclusion is universally conceded and the vital part of the machinery set up by the law to carry the provisions of the Act into effect is the Industrial Accident Board. The board is a state board and we think the Act implies that its first duty is to administer the Act so as to give the employee the greatest possible protection consistent with the purposes of the Act. We think it may be assumed that the board received from Love-Sinclair Service, Inc., the employer's statement referred to in section 2979 giving the information therein mentioned, and that the board from such statement and information determined "the amount of insurance which will be reasonably necessary to secure the compensation with which the said employer may reasonably be expected to be chargeable during such fiscal year." This necessarily must have been done, otherwise, the Love-Sinclair Service, Inc., would not have known what amount of insurance it was necessary to provide. As evidence of this having been done, such

employer did provide and file with the board the policy issued by the defendant and mentioned in the statement set out above, and it is also referred to in Claimant's Exhibit B which appears in the record. The statement and Exhibit B referred to show the compensation fixed in the amount of $7,400 to cover a payroll for the previous year of $5,452.57. These two facts we think sufficient to establish the contention that the board was informed of the intention of Love-Sinclair Service, Inc., to be enrolled under the Workmen's Compensation Act. This evidence is in the record unimpeached, and defendant's counsel admit the policy was filed with the board and the board's records show such filing.

In the case of *Piatt & Marks* v. *Swift & Co.*, 188 Mo. App. 584, 176 S. W. 434, it was said in substance, that the election to come under the Act does not have to be in any precise or technical form; that the posting of notices in the place of business proves conclusively that the company did elect to come under it. We think such ruling is consonant with the liberal construction of the Act enjoined by the statute and universally subscribed to by the courts. True, section 2979 provides: "Any ██ employer electing to become subject to and bound by compensation plan No. 2 shall file with the board written acceptance of the provisions of compensation plan No. 2," etc., but we are in no doubt that the legislative intent was to protect the employee and that the legislature had no intention of incorporating in the Act any provision that might be construed to defeat such intent. We think that provisions relative to enrollment and others which we shall advert to later, are directory only, not mandatory. Whether a statutory provision is directory or mandatory depends upon the intention of the legislature, to be ascertained from a consideration of the object of the statute and the consequences that would result from construing it one way or the other. The spirit as well as the letter must be considered, and no one will be heard to say that the legislature did not intend special protection for employees of the classes mentioned in the Act. The following decisions

support this view: *In re Seick,* 46 Cal. App. 363, 189 Pac. 314; *People* v. *San Bernardino High School District,* 62 Cal. App. 67, 216 Pac. 959; *People* v. *Earl,* 42 Colo. 238, 94 Pac. 294; *Valley Bank* v. *Malcolm,* 23 Ariz. 395, 204 Pac. 207; *Overland Co.* v. *Utter,* 44 Idaho, 385, 257 Pac. 480; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *State ex rel. Baker* v. *Wichman,* 52 Nev. 17, 279 Pac. 937; *Missouri Pac. Ry. Co.* v. *McIntosh,* 92 Okl. 153, 218 Pac. 693; *City of Enid* v. *Champlin Refining Co.,* 112 Okl. 168, 240 Pac. 604; *Lyons* v. *Gram,* 122 Or. 684, 260 Pac. 220; *National Surety Co.* v. *Campbell,* 108 Wash. 596, 185 Pac. 602; *Allen* v. *Lewis,* 26 Wyo. 85, 177 Pac. 433; Sutherland on Statutory Construction, sec. 610; 36 Cyc. 1157; Beach on Interpretation of Laws, 2d ed., sec. 152. We entertain no doubt about what the legislature intended to accomplish by the enactment of this law, and it will not be assumed that the members of the legislature stultified themselves by incorporating in the Act provisions that could be justly construed to defeat the purpose intended.

Furthermore, when W. S. Adler became the manager of Love-Sinclair Service, Inc., in August, 1931, he found the premium on the defendant's policy had not been paid, and, the concern being financially embarrassed, he wrote the board on October 12, 1931, to cancel the policy. The records of the board, after reciting the contents of the letter of cancellation, show the following: "Cancellation notice was mailed to both Walcott & Co., the agents for the Aetna Life Insurance Company, and to Love Sinclair Service Incorporated, Billings, Montana, by the board. The cancellation to become effective on November 7, 1931." It will be seen, therefore, that there can be no question about the fact that there was on file for a period of more than six months an insurance policy issued by the defendant company and filed with the board for the purpose of protecting the employees of Love-Sinclair Service, Inc. Under all the circumstances, we are of the opinion that the board is estopped to deny that Love-Sinclair Service, Inc., was enrolled with the board.

On the question of the "binder policy," some thirty days after ██ Adler, the manager of plaintiff's employer, wrote the board canceling the policy issued by the defendant as referred to above, Adler concluded the business should not be without protection and contacted West, the manager of the insurance agency that had issued the former policy, and requested that the old policy be reinstated or other insurance be obtained, and that Love-Sinclair Service, Inc., be permitted to pay for it on the installment plan. West undertook to do this and some three or four days later delivered to Adler a "binder policy." Adler testified that he was led to believe that the old policy was reinstated. When West delivered the binder policy to Adler he also delivered to him "two or three signs, stating that we were covered by the Industrial Accident Board. * * * I put the signs up in the shop then, notifying that we were covered by insurance." Adler did not file the binder policy with the board as provided by section 2979. He gave as his reason "the filing of the policy with the board is usually the function of the agent, and he had filed the policy previously," and he thought Mr. West would file it. Adler obviously was not clear as to what the binder policy represented, but his statement that the agent of the insurer usually filed such policies with the board is supported by Plaintiff's Exhibit B, which shows the West agency charged Love-Sinclair Service, Inc., $3 for filing fee." The binder policy was in force at the time plaintiff was injured. "About two weeks" after plaintiff was injured West notified Adler that he could not make the arrangements to accept payment for the insurance by installments, and West took up the binder policy and collected from Love-Sinclair Service, Inc., $14.72 premium for the time the binder policy had been in force. It was taken up "about two weeks" after plaintiff was injured, having been in force "six weeks or sixty days." Counsel for the defendant offered no evidence at the hearing and made no attempt to show that the defendant's agent was without authority to issue the binder policy; the premium that was collected for the binder policy

for the time it was in force was not repaid by the insurance company nor tendered back so far as the record shows. Here we have a situation where the insurer's agent assumed a risk and charged and collected the premium for the risk, and in defending an action brought to enforce the risk alleged under the policy the insurer did not in any manner repudiate the agent's authority to issue the policy nor offer to return the premium collected. Plaintiff's counsel made demand on both the agent and the attorney of the defendant to produce the binder policy. Counsel for the defendant stated that the binder policy was not available and that he thought it was in Hartford, Connecticut.

The defense here is based entirely on the theory that the employer did not comply with certain statutory provisions, such as filing the binder policy and the affidavit of posting notices in the places of business with the board. We have diligently searched the authorities and failed to find any decision where an insurer has been adjudged entitled to evade its liability on any such ground. As heretofore stated, these provisions are directory only, and failure to comply with them by oversight, inadvertence, or otherwise was not intended to inure to the benefit of an insurer who had issued a policy to an employer and received the usual premium in consideration of that contract. These statutory provisions were enacted for the purpose of directing the manner in which the ordinary business of the board should be conducted; they relate to matters pertinent alone to the employer, the employee and the board, set up by the legislature to carry out the provisions of the Act, and have nothing to do with a contract entered into by an insurer which the statute specifically provides imposes a liability running primarily and directly from the insurer to the injured employee. (Secs. 2981, 2988, Rev. Codes 1921.)

There is nothing in the record to show that the act of the agent in delivering the binder policy to the employer was an unauthorized act of the agent. Even if such act were unauthorized the defendant did not seasonably repudiate it and must

be assumed to have ratified it. The rule in this jurisdiction is that there must be an acceptance of the results of the act of an agent with an intent to ratify and with a full knowledge of all the material circumstances. (*Outlook Farmers' Elevator Co.* v. *American Surety Co. of New York,* 70 Mont. 8, 223 Pac. 905.) But it cannot be said that defendant was not advised of the facts. Plaintiff's claim was filed with the board June 28, 1932; the hearing thereon was had before the board May 25, 1933, approximately eleven months after the claim was filed, and defendant was represented at that hearing by counsel and the agent's authority was not made an issue. March 26, 1934, or ten months after the hearing before the board, the matter was heard in the district court and additional evidence introduced, and no question was raised about the agent's authority. If the agent were not authorized in the first place, certainly the obligation was on the defendant to repudiate the agent's act within a reasonable time. (*Carlson* v. *Stone-Ordean-Wells Co.,* 40 Mont. 434, 107 Pac. 419; *Leviten* v. *Bickley, Manderville & Wimple,* (C. C. A.) 35 Fed. (2d) 825. See, also, *Smith* v. *Fletcher,* 75 Minn. 189, 77 N. W. 800; 2 C. J. 488.)

The findings of the board and of the district court are contrary to the preponderance of the evidence, and the judgment is therefore reversed and the cause remanded to the district court, with instructions to remand the proceeding to the Industrial Accident Board for allowance of such compensation to plaintiff as is provided by statute.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.