17553

Dorothy Case CARTER, Respondent, v. ASSOCIATED PETROLEUM CARRIERS and Duncan Oil Company, Pennsylvania Threshermen's & Farmers Mutual Casualty Company (for Associated Petroleum Carriers) and Iowa Mutual Insurance Company (for Duncan Oil Company), of which Iowa Mutual is, Appellant.

(110 S. E. (2d) 8)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone* and *Ray T. Culclasure,* of Greenville, *for Appellant,*

*Messrs. Hemphill & Hemphill,* of Chester, *for Respondents,*

July 10, 1959.

Stukes, Chief Justice.

The facts of this case are stated in the opinion of Mr. Justice Taylor, with the result of which I regret that I cannot agree. It is a hard case, hard on the claimant, but following the old adage, a hard case must not be permitted to make bad law.

Section 72-109 of the Code, which follows, prescribes the method by which an exempt employer, such as that here, may subject himself to the terms of the Workmen's Compensation Law:

"72-109. Employers exempted may waive exemption. Any person employing employees in the State and exempted from the mandatory provisions of this Title may come in under the terms of this Title and receive the benefits and be subject to the liabilities of this Title by filing with the Commission a written notice of his desire to be subject to the terms and provisions of this Title. Any such person shall come under the provisions of this Title and be affected thereby thirty days after the date of such notice."

It is seen that the employer is required to file with the Commission a written notice of his desire to be subject to the terms and provisions of the Act. When this has been done, the election does not become effective until after the expiration of thirty days from the date of such notice. The General Assembly evidently recognized the necessity of specifying in clear and unambiguous terms the manner in which an exempt employer may come under the Act so as to eliminate any uncertainty as to whether the rights of the parties would be governed by the common law or the Workmen's Compensation Act.

In *Eaves v. Contract Trucking Co.*, 55 N. M. 463, 235 P. (2d) 530, 531, the Court had under consideration a similar provision in the New Mexico statute which permitted an employer to elect to be subject to the Act by filing in the office of the District Court "a written statement to the

effect that he accepts the provisions of this Act." 1941 Comp. § 57-904. In construing this provision, the Court said:

"It provides for an election by the employer of his doing certain, definite and specific things in a certain way and in a certain place. The fact that an employer and his employees may come under the provisions of the Workmen's Compensation Act very materially affects, changes and alters the rights and liabilities of the employer and his employees. It is of great importance to people in industry, both employees and employers to definitely know at all times whether in their relationship they are subject to the common law or the workmen's compensation law. Their status, their rights and liabilities should not be left to conjecture or in doubt. The legislature did not leave room for doubt by merely saying an employer could elect to become subject to the act. It stated he could elect by doing certain, definite and prescribed things in a specific way and limited his election to be made by the doing of such specific acts in the prescribed manner."

It was held in the *Eaves case* that the mere fact that the employer procured workmen's compensation insurance did not constitute an implied election to come within the Act.

We held in *Yeomans v. Anheuser-Busch, Inc.,* 198 S. C. 65, 15 S. E. (2d) 833, 136 A. L. R. 894, that substantial, rather than complete, compliance with Section 72-109 might suffice but here there was not the slightest attempt at compliance with the statute; nothing was filed with the Commission and no notice of any kind given it. In the *Yeomans case* the employer filed with the Industrial Commission a notice that it had procured compensation insurance. The Commission acknowledged receipt of the proof of the insurance and that it had been filed, and assigned code numbers to the employer and carrier and instructed them with respect to the report of accidents, etc. But in the instant case not only was no policy ever filed with the Commission or other notice given to it but no policy was ever issued. Application was made but the insurance company declined to issue the

policy. The inevitable result is that the Commission had no jurisdiction of respondent's claim.

In *Kindall v. McBirney,* 52 Idaho 65, 11 P. (2d) 370, 371, the Court, in line with the general rule elsewhere, said:

"Jurisdiction cannot be acquired by the Industrial Accident Board by estoppel. *Southern Surety Co. v. Inabnit,* 119 Tex. 67, 24 S. W. (2d) 375; *Employers' Liability Assurance Corp. v. Industrial Accident Commission,* 187 Cal. 615, 203 P. 95, 97; *Zurich General Accident & Liability Ins. Co. v. Industrial Accident Commission,* 191 Cal. 770, 218 P. 563. Nor can such jurisdiction be acquired by agreement, waiver, or conduct. *Jester v. Thompson,* 99 Conn. 236, 121 A. 470; *Waldum v. Lake Superior Terminal & Transfer Ry. Co.,* 169 Wis. 137, 170 N. W. 729; *Doey v. Clarence P. Howland Co.,* 224 N. Y. 30, 120 N. E. 53; *Hassen v. Elm Coal Co.,* 184 App. Div. 715, 172 N. Y. S. 430; *New Amsterdam Casualty Co. v. Industrial Accident Commission,* 66 Cal. App. 86, 225 P. 459."

Even if it be assumed that the act of the employer in applying for insurance and telling his employees that he had procured workmen's compensation coverage constituted an election, under the clear terms of the statute such election would not be effective until the lapse of thirty days. Here the deceased was killed two days after the application was made for the policy. In *Ham v. Mullins Lumber Co.,* 193 S. C. 66, 7 S. E. (2d) 712, 718, the Court said: "The employer's election to come under the Act became effective thirty days after its giving of notice; the employee came under the Act upon his acquiescence in his employer's election for thirty days after notice thereof."

Both in the *Ham* and in the *Yeomans cases* the accident occurred more than thirty days after the alleged election on the part of the employer.

It is said that the circumstances show an oral contract of insurance to become effective immediately. Aside from the fact that no verbal agreement to operate under the Act would constitute a compliance with the

terms of the statute, the thirty days provision would be regarded as a part of such agreement. The compensation act becomes a part of such contract of insurance just as if the terms of the Act were written into said contract. It may be true that both the insurance agent and the employer were unaware of the fact that an election to come under the Act did not become effective for thirty days but they are bound by the Act and had constructive knowledge of it.

I think it is very clear that the employee in this case was not bound. During the thirty-day period he undoubtedly could have brought an action at common law for damages on account of any injuries received. The mere fact that he remained silent when told by his employer that he had insurance coverage could not be held as a waiver of his common-law rights. If he were not under the Act, it is difficult to see how the employer would be bound.

If, as has been concluded, the parties were not under the Act, it necessarily follows that there is no liability on the part of the insurance carrier. Its liability only extended to those who had elected to operate under the provisions of the Act.

The instant case is strikingly similar to *Cody v. Combs,* 302 Ky. 596, 194 S. W. (2d) 525. In that case, a claim was filed by the widow for death benefits under Workmen's Compensation against one Buck Combs, operator of a coal mine, and his insurance carrier, Bituminous Casualty Corporation. Combs had admittedly taken out a policy at the time he began the operation of his mine some three months before the claimant's death, but not being familiar with the Compensation Act had not had his employee sign a register which was the election required under the Workmen's Compensation Act, KRS 342.001 *et seq.* The employer had not supplied the register because in good faith he thought that taking out the policy and filing it with the Commission was sufficient. After the claimant's death, the widow and the employer, Combs, agreed that the accident occurred in the course of employment, etc., and that the claimant's widow

was entitled to Workmen's Compensation benefits at the stipulated rate. The insurance company intervened and asked that the agreement not be binding or be cancelled as to it, contending that the Workmen's Compensation Commission did not have jurisdiction because there had been no election to come within the terms of the Act. The argument was advanced, as in the case at bar, that since the widow and employer had agreed to compensation the agreement was binding upon the insurance company. The claimant cited sections of the statute which provided that if the employer and employee agreed to compensation, a memorandum should be filed with the Board and approved and once done became as enforceable as any other order of the court. The court, disposing of this contention, stated at page 527 of 194 S. W. (2d) :

"These statutes apply only where both the employer and employee have accepted the provisions of the Workmen's Compensation Act in the manner *prescribed by the Act*. (Emphasis added.) Otherwise, the Workmen's Compensation Board is without jurisdiction to entertain the case and enter an award. * * * In their contention that the insurance carrier was bound by the agreement entered into by Alta E. Cody and Buck Combs and had no right to intervene in the proceeding before the Workmen's Compensation Board, the appellants overlook the fact that the insurance carrier is liable only to employees of its insured who have elected to operate under the provisions of the Act. * * * Insurance companies and sureties on indemnity bonds or other bonds to secure the liability of the employer to pay compensation can be held bound only when the provisions of the act under which the bond is given have been complied with. The Compensation Act becomes a part of such contract of insurance and such contracts of indemnity or security just as if the terms of the act were written into said contract. So the matter of the evidence of the acceptance by the employee of the act is not simply a question between the employer and employee."

The facts of *Miller v. Aetna Life Ins. Co.,* 101 Mont. 212, 53 P. (2d) 704, 706, which is cited, completely distinguish it from the case in hand as is shown by the following quotation from the opinion:

"We think that the board's finding that its records do not show that Love-Sinclair Service, Inc., ever elected to be bound by the Workmen's Compensation Act is erroneous. First, because it is shown in the record here that Love-Sinclair Service, Inc., succeeded Love & McTavish, Inc., and that the latter corporation was enrolled * * *; second, that the board's records further show and defendant's counsel admit that from May, 1931, to Nov. 7, 1931, there was on file with the board a policy issued by the defendant" to Love-Sinclair Service Station.

The only part of the text at 99 C. J. S., Workmen's Compensation, § 122, p. 428 which may be said to support affirmance here is the following: "The failure of the employer to comply with an act specifying the method of enrollment does not inure to the benefit of his insurer." As authority for this there is cited in the footnote only the case of *Miller v. Aetna Life Ins. Co., supra,* 53 P. (2d) 704, which is found upon examination to be distinguished by its facts from the case at bar and the following quotation from 99 C. J. S., Workmen's Compensation, § 122, p. 426, is to the contrary:

"The employer's election to come within a compensation act, or his election to bring employees within the act who would otherwise be excluded must be indicated in the manner prescribed by the act, and if the employer does not manifest his election in accordance with the statute he is not covered even though he intended to be, and believed he was, covered."

Pertinent annotations are in 103 A. L. R. 1523 and 136 A. L. R. 899. From the latter, 136 A. L. R. 900, the following is quoted:

"Workmen's compensation acts generally contain provisions governing the acceptance of them by employers as to

whom the acts are not mandatory. No general rule can be laid down other than that a substantial compliance with these provisions is usually required. The question as to whether there has been a sufficient compliance depends upon the facts of the individual cases."

The majority of the court having concurred in this opinion, the judgment under appeal is reversed and, as in it, the question of the liability of Associated Petroleum Carriers, Inc., and its carrier, Pennsylvania Threshermen's & Farmers' Mutual Casualty Company, reserved; as to that question no opinion is intimated.

Reversed.

OXNER and LEGGE, JJ., concur.

TAYLOR and MOSS, JJ., dissent.

TAYLOR, Justice (dissenting).

I regret I am unable to agree with the majority opinion in this case. The Workmen's Compensation Act was enacted for the benefit of the employee and his dependents, the employer, and the public generally but not the insurance carrier whose liability runs directly to the insured employee; hence, it should be estopped from advantaging itself through some delict of the employer.

This appeal comes from an order of the Court of Common Pleas for York County affirming an award of the South Carolina Industrial Commission, wherein the Duncan Oil Company, as employer, and the Iowa Mutual Insurance Company, as its carrier, are ordered to pay benefits to the beneficiaries of Brady R. Carter, deceased.

The appellant, Iowa Mutual Insurance Company, contends (1) that at the time of injury the parties were not bound by the terms of the Workmen's Compensation Act and (2) that the Commissioner erred in excluding a letter from appellant's Southern Division Office to J. M. Hiers of Hiers-Clarkson Agency dated October 6, 1955.

The record reveals that the deceased, Brady R. Carter, at the time of injury was an employee of Duncan Oil Company, which was engaged in hauling petroleum products under a lease agreement with Associated Petroleum Carriers, Inc. Duncan Oil Company had only two employees and, therefore, was not covered by Workmen's Compensation unless by election. The equipment lease contained a provision that the equipment should be leased to haul under Associated Petroleum Carriers' rates and required a bond by Duncan Oil Company to Associated Petroleum Carriers, indemnifying and saving harmless Associated for claims or awards made under the Workmen's Compensation Act. A pertinent portion of the lease reads as follows:

"(b) That if the undersigned shall indemnify and save harmless Associated, its Successors and Assigns, against any and all claim or awards made under the Workmen's Compensation Act of any State or territory of the United States, by or to any and all employees or agents of undersigned, or their heirs, executors, administrators or assigns, or of any beneficiary or beneficiaries named in any such act or acts (and any driver or drivers, operator or operators and any other person or persons performing any duty or duties in connection with, directly or indirectly, said motor transport equipment or its or their cargo or cargoes, are hereby declared and acknowledged to be the employees and agents of the undersigned and not of Associated)."

In order to comply with the terms of the lease requiring Workmen's Compensation Insurance, Mr. E. F. Duncan d/b/a Duncan Oil Company, which did not come under the provisions of the Workmen's Compensation Act by operation of law, on October 3, 1955, contacted Mr. J. M. Hiers, of Hiers-Clarkson Insurance Agency, a registered agent for Iowa Mutual Insurance Company and filed an application for the necessary insurance coverage on an Iowa Mutual Insurance Company blank furnished by Hiers, discussed with Hiers the terms of the coverage, and paid Hiers one-half of the annual premium. Hiers stated that the application was

on an Iowa Mutual Insurance Company form, that the premium for the policy was accepted by him as agent for Iowa Mutual Insurance Company, and that he was acting as agent for Iowa Mutual Insurance Company and did not deny the testimony of Duncan that he had told Duncan that the coverage was effective immediately. The next day, October 4, Hiers cashed the check given to him by Duncan for the premium. As a result of his arrangement with Hiers, Duncan told his employees, including the deceased, that they were covered as of that time by Workmen's Compensation. On October 5, Brady R. Carter, one of the employees, while driving the leased equipment was killed in an accident, which is conceded to have arisen out of and in the course of his employment. Hiers, upon being notified, immediately went to the scene with Duncan and a brother of deceased and later employed one named Lynch to make an investigation. Meanwhile, Duncan informed deceased's wife that he was covered by Workmen's Compensation; and when Lynch, the adjuster, called on Duncan on October 9 and 10, he advised Duncan that he was representing Iowa Mutual Insurance Company and that the widow would be paid. Thereafter, the investigation was taken over by another party, and Iowa Mutual Insurance Company, on November 14, denied liability, and attempted to return the premium paid by Duncan, which was refused.

At the hearing before the single Commissioner, Hiers stated that he had received a letter from G. B. Harril Insurance Agency of Forest City, North Carolina, to whom he had sent the application, stating that the application had been refused. This letter was objected to and excluded by the single Commissioner. There is no showing that the letter was ever brought to the attention of the Duncan Oil Company or any party of interest. It does appear, however, that when Associated requested of Duncan some evidence of insurance, Duncan contacted Hiers who wrote a letter on October 12, six days after the accident, advising:

"The application has been received * * * However, the policy has not been issued of this date and we are, therefore, unable to give you a formal certificate of insurance. We will immediately advise you upon further information from our Southern Division Office."

Appended to the letter was a postcript, signed by Hiers, as follows:

"This application was processed in our Office on October 3, 1955, and payment received on the same date."

Hiers at this time did not tell Duncan of the correspondence of October 6, from the Harris Agency, and no mention was made of it in his letter dated October 12; but on November 14, Hiers wrote Duncan endeavoring to return the premium, which was refused.

No formal policy of insurance was ever issued, but it is apparent from the undisputed facts that the necessary essentials were agreed upon. For all intents and purposes an insurance contract had been agreed upon and was enforceable between the parties as an oral contract may be enforceable if the essentials of the contract are agreed upon. Every detail need not be expressed but may be implied from the customs and usual forms, from the course of dealing, and from any former course of dealing. *Carolina Aviation, Inc., v. Glens Falls Ins. Co.,* 214 S. C. 222, 51 S. E. (2d) 757. Such contracts are effective when the parties agree upon the necessary terms, including those in relation to the subject matter insured, the risks insured against, the commencement and duration of the risks, the amount of the insurance, and the premium to be paid. *Fulmer v. London, Liverpool & Globe Fire Insurance Co.,* 172 S. C. 525, 174 S. E. 466; *Gaskins v. Firemen's Insurance Co. of Newark, N. J.,* 206 S. C. 213, 33 S. E. (2d) 498. In instant case, there is an abundance of evidence that there was a meeting of the minds on October 3, an acceptance of one-half of the annual premium and the cashing of the Duncan Check by Hiers on October 4, and Carter's act of operating the equipment leased to Associated Petroleum Carriers with knowledge of such arrangement

is evidence of an election on his part to come under the provisions of the act. After the accident on October 5, Hiers visited the scene along with one of deceased's brothers and Duncan. Thereafter, Hiers secured the services of an adjuster, one Lynch, who, after visiting the scene, informed Duncan that the coverage was in force and that payment would be forthcoming on October 12, Hiers wrote the letter, heretofore quoted, stating that the *"formal certificate"* had not been issued and that he would be further advised upon information from the division office and no attempt of premium refund was made until November 14.

In the determination of any issues of law or fact arising out of claims for Workmen's Compensation, it must be remembered that the basic purpose of the Compensation Act is the inclusion of employers and employees and not their exclusion, and doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion. *Horton v. Baruch,* 217 S. C. 48, 59 S. E. (2d) 545; *Alewine v. Tobin Quarries, Inc.,* 206 S. C. 103, 33 S. E. (2d) 81; *Ham v. Mullins Lumber Co.,* 193 S. C. 66, 7 S. E. (2d) 712.

Under the terms of the Workmen's Compensation Act, an employer may be a self-insurer or he may purchase coverage such as was purchased in this case. Once there is a meeting of the minds between the employer and the insurance company, and it is transmitted to and accepted by the employee and relied upon by both employer and employee, formal notice of election is not a mandatory prerequisite of coverage insofar as the liability of defendant Iowa Mutual Insurance Company is concerned. The term "may" as used in the permissive part of Section 72-109, Code of Laws of South Carolina 1952, gives the employer a right to come in. The use of the word "shall" only applies where the positive action of written notice is given timely effect as will be seen by an analysis of said Section which reads as follows:

"Any person employing employees in the State and exempted from the mandatory provisions of this Title may come in under the terms of this Title and receive the bene-

fits and be subject to the liabilities of this Title by filing with the Commission a written notice of his desire to be subject to the terms and provisions of this Title. Any such person shall come under the provisions of this Title and be affected thereby thirty days after the date of such notice."

The thirty-day provision of the above-quoted Section provides a manner in which the employer, if he makes an election to come under the Act, may have his election become effective thirty days after giving of the notice without further act on his part or that of the employee; and should the employee acquiesce in the employer's election for thirty days after the notice, the employee, not having given notice to the contrary, would be bound by the election which he had not protested. There is nothing, however, in the Act to prohibit the contracting parties from coming under the provisions of the Act at an earlier time or immediately if it be desired. Were this not so, an employer would be required to wait the full thirty days before the Act would become effective and at the same time pay premiums on insurance coverage which would be non-existent because of the thirty-day waiting period, as the policy, when issued, bears the date of application.

This Court has held that the Statute does not prescribe a particular form of notice from the employer to be filed with the proper office or official of an intention to come within the Act and such notice need not be in any precise or technical form; and the employer may be bound, although he fails to file formal notice of election. *Yeomans v. Anheuser-Busch, Inc.,* 198 S. C. 65, 15 S. E. (2d) 833, 136 A. L. R. 894.

It is significant in the case before us that neither employer nor employee are seeking to avoid jurisdiction, but the party seeking to defeat it is a party for whose benefit the Act was not created. It was never the legislative intent to allow an insurer to accept the premium for Workmen's Compensation insurance, assure the applicant of coverage, and then after claim has arisen defeat the very purpose of the Act by hav-

ing remained silent as to statutory technicalities which should have been observed by the employer or employee.

The reasoning of this Court in *Ham v. Mullins Lumber Company, supra,* is of interest here:

"** * It contained not the slightest suggestion that anything further needed to be done by him or anyone else. Under these circumstances his silent acquiescence was most natural and reasonable. The matter is to be analyzed thus. Defendants misrepresented the true situation to decedent and concealed a portion of the same from him, knowing full well the character of such misrepresentation and concealment, and intending that decedent act thereon and govern himself thereby. Decedent knew nothing of the true situation, or of the elements concealed from him by the notice, and had no means of knowing anything about them. Under defendants' contention he was then in a position to acquire for himself and his loved ones the protection of the Act by electing, but he relied on their notice and did not serve notice of election, thereby removing himself and family from a position of potential protection to one utterly devoid of such protection. Under these facts defendants are clearly and completely estopped to deny liability, and I so hold. See *Gray Cotton Mills v. Spartanburg County Mills,* 139 S. C. 223, 137 S. E. 684; *Thompson v. Hudgens,* 161 S. C. 450, 159 S. E. 807; *Georgia Veneer & Package Company v. S. H. & E. H. Frost, Inc.,* 168 S. C. 285, 167 S. E. 500 [193 S. C. 66, 7 S. E. (2d) 722]."

Under the circumstances of this case, I am convinced that Iowa Mutual Insurance Company is estopped from denying liability by questioning the jurisdiction of the Commission and thereby being advantaged by reason of the fact that the employer did not formally file written notice with the Commission within the two days after arranging for coverage. The failure of the employer to comply with an act specifying the method of enrollment does not inure to the benefit of the insurer, 99 C. J. S., Workmen's Compensation, § 122, p. 428, citing *Miller v. Aetna Life Ins. Co.,*

101 Mont. 212, 53 P. (2d) 704, 708, wherein the Supreme Court of Montana said:

"* * * Whether a statutory provision is directory or mandatory depends upon the intention of the Legislature, to be ascertained from a consideration of the object of the statute and the consequences that would result from construing it one way or the other.

* * *

"The defense here is based entirely on the theory that the employer did not comply with certain statutory provisions, such as filing the binder policy and the affidavit of posting notices in the places of business with the board. * * * As heretofore stated, these provisions are directory only, and failure to comply with them by oversight, inadvertence, or otherwise was not intended to inure to the benefit of an insurer who had issued a policy to an employer and received the usual premium in consideration of that contract. These statutory provisions were enacted for the purpose of directing the manner in which the ordinary business of the board should be conducted; they relate to matters pertinent alone to the employer, the employee and the board, set up by the Legislature to carry out the provisions of the act, and have nothing to do with a contract entered into by an insurer which the statute specifically provides imposes a liability running primarily and directly from the insurer to the injured employee. * * *"

Appellant's next contention that the Hearing Commissioner erred in excluding a letter written by Iowa Mutual Insurance Company's Southern Division Office to J. M. Hiers of Hiers-Clarkson Agency, dated October 6, 1955, is without merit. The contract between the employer and its insurance carrier was entered into on October 3. Further, there is no evidence of any knowledge on the part of Duncan or, of course, the deceased of such letter; and it was properly excluded under *Funderburk v. Sovereign Camp, W. O. W.,* 179 S. C. 80, 183 S. E. 462, wherein this Court held that communications between the home office and one

other than the deceased were held to be self-serving declarations.

For the foregoing reasons, I am of opinion that all exceptions should be dismissed and the order appealed from affirmed.

Moss, J., concurs.