CHISHOLM, RESPONDENT, *v.* VOCATIONAL SCHOOL FOR GIRLS ET AL., APPELLANTS.

(No. 7,631.)

(Submitted December 7, 1936.  Decided December 16, 1936.)

[64 Pac. (2d) 838.]

504

*Mr. Enor K. Matson,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Appellants, submitted a brief; *Mr. Dousman* argued the cause orally.

*Mr. J. R. Wine,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal by the Industrial Accident Board and the Vocational School for Girls from a judgment of the district court of Lewis and Clark county, awarding Mary Chisholm compensation for injuries sustained by her as the result of an industrial accident. The matter was submitted to the district court upon an agreed statement of facts, to which is appended, as a part thereof, the record and proceedings of

the defendant board with reference to Mrs. Chisholm's claim for compensation, from which the undisputed facts appear as follows:

On November 30, 1930, Mrs. Chisholm was the night matron at the State Industrial School for Girls, located in Lewis and Clark county, and qualified under Plan 3 of the Workmen's Compensation Act. On the evening of that day, while engaged in her employer's business and when driving her automobile out of a filling station in the city of Helena, Mrs. Chisholm was seriously injured as the result of a collision with a delivery truck belonging to "Nagle's, Inc.," the accident being caused by the negligent operation of the truck. Mrs. Chisholm's injuries were due to an industrial accident arising out of and in the course of her employment, and her injuries were compensable under the Workmen's Compensation Act. Ten days after the accident a detailed report thereof was made by the employer to the board, and, on December 29, 1930, there was filed with the board, by the claimant or on her behalf, a written claim sufficient in all particulars to entitle her to compensation, except that it was not "under oath." On receipt of the claim it was duly stamped as received by the board but was then returned to the claimant with the following letter of explanation: "We are returning herewith your claim for compensation, for the reason that you failed to sign the same and have the same acknowledged before a notary public. This is necessary before any compensation can be paid."

Thereafter the claimant signed and swore to the claim as originally presented, and returned it to the board on May 20, 1931. On April 20, 1932, the board "denied and dismissed" Mrs. Chisholm's claim on the ground that "the only claim presented * * * was filed with the board on May 30 (20) 1931, thirteen days after the expiration of the statutory period within which claims may be filed." Thereafter, on July 7, 1933, the claimant filed her "petition to determine claim of compensation," and it was stipulated and agreed that

the board would take jurisdiction, hear and determine the controversy, and, if it denied her compensation and an appeal was taken and the decision and order of the board reversed and she was awarded compensation by the court, "that then and thereupon, immediately following a final court decision, * * * plaintiff would be entitled to compensation as a total disability case for a period of three hundred and seventy-five weeks at the rate of $9.80 per week, plus the allowance of $500 for the physician's and hospital fees * * * as of the date of her injury."

On May 3, 1933, the board promulgated its "order and decision" again denying the claimant compensation on the ground that she did not file a claim "under oath within the time allowed by law." This order recites the fact, set up in the agreed statement of facts, that during the period from the return to her of her unsworn claim and its filing on May 20, 1931, she was negotiating, through attorneys employed for that purpose, with the insurance company which carried the liability for Nagle's, Inc., for a settlement of a claim for damages and "withheld the filing of the 'claim for compensation' until after she had received from Nagle's, Inc., the gross sum of $4,650 for the injury she received in said collision and accident and that of this sum she paid in hospital fees, medical expenses and attorney's fees the sum of $1,925.25."

Motion for a rehearing was duly made and denied and the claimant appealed to the district court, which appeal was submitted on the agreed statement of facts, the statement containing the agreement that a controversy existed between the claimant and the board as to whether the board acquired jurisdiction to allow the claim, and as to whether the settlement with Nagle's, Inc., constituted a bar to an award of compensation by the board.

Briefs were filed and thereafter the district court determined that "upon the whole record submitted" the claimant should have been awarded compensation, and accordingly "vacated,

annulled and set aside'' the order and decision of the board and, pursuant to the stipulation of the parties, awarded compensation as agreed upon above.

By appropriate specifications of error the correctness of the court's determination of each of the questions presented is challenged.

The answer to the first question in controversy depends upon whether or not the claimant brought herself within the mandatory provisions of section 2899, Revised Codes, which declares that ''all claims shall be forever barred unless presented in writing under oath * * * within six months from the happening of the accident.'' This section was amended to extend the limitation to twelve months by Chapter 34, Laws of 1935, but claimant's case must be decided on the law as it existed at the time she was required to file her claim.

We are commanded to give a liberal construction to every ██ part and section of the Compensation Act (sec. 2964, Rev. Codes), but when the terms of a statute are plain, unambiguous, direct and certain, the statute speaks for itself and ''there is naught for the court to construe''; it follows that no excuse can be accepted for a failure to comply with the mandatory requirement of the statute. (*Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616.) In the *Chmielewska Case* no claim was filed within the six-months period, and counsel for the claimant sought to excuse the failure and extend the time within which the claim must be filed. Here the claim was filed within the six-months period, but it was defective in that it was not ''under oath.'' True, the law requires that the claim be presented ''under oath,'' but the law likewise requires the pleadings in a civil action to be made under oath, in that it requires that ''all complaints, answers and replies must be verified'' (sec. 9163, Rev. Codes); yet, as to this latter requirement, it is held that the verification of the pleadings is not necessary to vest jurisdiction in courts (*Commercial Bank & Trust Co.* v. *Jordan,* 85 Mont.

375, 278 Pac. 832, 65 A. L. R. 968) and, as the verification is no part of the pleading, its absence is waived by failure to object to the defect, and, on objection, the defect may be cured by amendment of the pleading on file. (*State ex rel. Jensen* v. *District Court,* ante, p. 461.)

It is declared in Bancroft's Code Pleading, section 500, that "adding a verification to. a complaint is not, strictly speaking, an amendment to the pleading itself," and that a motion to verify a pleading "by adding the verification thereto * * * is proper, and it has been held to be an abuse of discretion to deny such a motion pending a hearing of a motion to strike out the pleading." It is there further declared that an unsigned complaint is sufficient to toll the statute of limitations even though the law requires the complaint to be signed by counsel. (Id., sec. 491.)

The filing of an amended complaint which does not change the cause of action alleged, or amendments to a complaint in merely formal matters, though made after the time allowed by law for the filing of a complaint, cure the defects as of the date of the original filing and render improper a plea of the statute of limitations. (*Claussen* v. *Chapin,* 69 Mont. 205, 221 Pac. 1073; Bancroft's Code Pleading, secs. 561–563; 49 C. J. 560; 1 Standard Ency. of Practice, 928, 929.)

In the *Claussen Case,* above, it is said: "We need not stop to consider whether the verification is technically a part of the pleading—it is a part of it in the sense that it is required by statute, * * * and it is subject to amendment under the above rules; * * * and the fact that the complaint as originally drawn did not have the proper verification afforded no ground whatever for the order dissolving the injunction" after a proper verification had been added. In like manner, the necessary oath to the claim filed is in a sense a part of the claim in the instant case, but it did not in any manner change the claim as originally filed, or in any particular, when the oath was added; it was the claim which was filed

on May 20, 1931, and returned to the claimant for "verification."

The foregoing rules, applied to the formal pleading and practice by lawyers in courts of law, should have at least as liberal application to pleading and practice before the Industrial Accident Board, which is a "poor man's court, or *rusticum forum,* wherein a claimant may present his cause without the assistance of counsel and, therefore, the strict rules of pleading and practice should not be applied." (*Shugg* v. *Anaconda C. M. Co.,* 100 Mont. 159, 46 Pac. (2d) 435.)

Herein the claim was duly filed; it was complete except for the fact that it was not made "under oath"; thereupon it was, without objection to it, without motion to strike or any action thereon by the board, returned to the claimant for completion; it was completed by the proper oath, without in any manner changing the claim and, when returned to the board it became a valid and sufficient claim as of the date of filing, to-wit, May 20, 1931. Paraphrasing the declaration of this court in the *Claussen Case,* above, the fact that the claim as originally filed was not under oath, afforded no ground whatever for the order and decision of the board denying and dismissing the claim.

Under authorities cited by the Attorney General, a different result would be compelled had the claim originally filed not been sufficient as to facts (*Fidelity & Cas. Co.* v. *Industrial Accident Com.,* 177 Cal. 472, 170 Pac. 1112), or had the board dismissed the proceeding without prejudice instead of advising the claimant to have the filed claim "verified before a notary public," and the claimant had filed a new claim after the expiration of the six months (*Oklahoma Pipe Line Co.* v. *Farrell,* 160 Okl. 58, 15 Pac. (2d) 599), but neither of these decisions militates against the above holding on the facts shown here.

On the second question presented the position taken by the Attorney General is that, under the law, the claimant could not recover twice for the same accident and, having

elected to recover from the party who injured her, she could not thereafter recover compensation from the board. Decisions of this court are cited to support this contention. However, the law governing in such cases has been twice changed; "this case must be decided upon the law as it was when the accident occurred." (*Clark* v. *Olson,* 96 Mont. 417, 31 Pac. (2d) 283.)

In the *Clark Case* we declared that whether an employee injured by a third person shall receive payment under the Compensation Act and also be accorded the right to sue the tort-feasor for damages and thus, in effect, permit double compensation, is a matter of legislative control.

On the initiation of the right of employees to receive compensation for injuries as provided in the Compensation Act, the legislature declared this remedy exclusive of any other remedy, except where, as here, the injury was caused by the negligence of a third person away from the plant of the employer, in which case the employee was given an election to take under the Act or to seek damages from such third person. (Sec. 6, Chap. 96, Laws of 1915; sec. 2863, Rev. Codes 1921; *Bruce* v. *McAdoo,* 65 Mont. 275, 211 Pac. 772; *Black* v. *Northern Pacific Ry. Co.,* 66 Mont. 538, 214 Pac. 82.) Under such an Act all causes of action theretofore existing, except as they are saved by the provisions of the Act, are done away with. (*Northern Pacific Ry. Co.* v. *Meese,* 239 U. S. 614, 36 Sup. Ct. 223, 60 L. Ed. 467.) However, this right of election and preservation of the right against the independent tort-feasor was withdrawn and done away with in 1925 (Chap. 121, Laws of 1925; *Clark* v. *Olson,* above), and this was the condition of the law at the time of claimant's accident and injury in 1930, as the law remained unchanged until 1933, when the legislature amended section 2839 of the Revised Codes of 1921, so as to give to an injured employee, under certain circumstances, a right of action against such independent tort-feasor in addition to the right to receive compensation under the Act.

(Chap. 138, Laws of 1933; *Koppang* v. *Sevier,* 101 Mont. 234, 53 Pac. (2d) 455.)

It is, therefore, clear that at the time of this claimant's injury, she had neither the right of election between the remedy of an action for damages, or that of the receipt of compensation, nor a right of action against the Nagle corporation at all; her right to apply for compensation under the Act was "exclusive." (*Clark* v. *Olson,* above.)

It being conceded that this claimant received $4,650 from Nagle's, Inc., paid by the insurance carrier of that concern in settlement of a supposed liability, what is the situation of the claimant with respect to her right to compensation under the Act? This question is not briefed; it is not mentioned by the Attorney General, and counsel for claimant passes it over with the brief statement that "payment, if any, made by Nagle's Inc., or its insurer, was purely voluntary and certainly not the result of any possible legal liability"; but this declaration does not, by any means, dispose of the question.

The voluntary payment of a debt by one not legally liable to do so nevertheless extinguishes the debt as to the creditor (*Penwell* v. *Flickinger,* 46 Mont. 526, 129 Pac. 323), and the result is the same where one of two joint tort-feasors pays the damages claimed. (*Tanner* v. *Bowen,* 34 Mont. 121, 85 Pac. 876, 115 Am. St. Rep. 529, 9 Ann. Cas. 517, 7 L. R. A. (n. s.) 534.)

In a case such as this, if the two parties to whom the injured person looks for compensation are joint tort-feasors, where the injured person accepts full satisfaction or what the law considers such, from one without reservation, as it appears this claimant did from Nagle's, Inc., it is a bar to an action against the other; but if he accepts a payment in consideration of a covenant not to sue, or it is understood that the payment is not in full satisfaction, such payment is not a bar. (*Black* v. *Martin,* 88 Mont. 256, 292 Pac. 577; *Meinecke* v. *Intermountain Transp. Co.,* 101 Mont. 315, 55 Pac. (2d) 680.)

It has been held that, in personal injury actions, if a claim is made against one and he settles the claim, all who may have been liable are discharged, whether the one released was liable or not (*Leddy* v. *Barney,* 139 Mass. 394, 2 N. E. 107, approved in *Tanner* v. *Bowen,* above; *Miller* v. *Beck,* 108 Iowa, 575, 79 N. W. 344). This is a reasonable rule, for, after all, just as in the case of debt, all that the injured party in such a case is entitled to is compensation for the injury, and it is immaterial from whom that compensation comes. "A sufficient atonement having been made for the trespass, the whole matter is at an end.. It is as though the wrong had never been done." (*Dulaney* v. *Buffum,* 173 Mo. 1, 73 S. W. 125; *Payne* v. *Bertman,* 224 Mo. App. 690, 27 S. W. (2d) 28.)

However, the right to recover damages for an injury is not a debt in the ordinary sense of the term (*Coty* v. *Cogswell,* 100 Mont. 495, 50 Pac. (2d) 249); nor is the right to secure compensation for the results of an industrial accident, as provided for in the Workmen's Compensation Act, a cause of action for damages for the resulting injury. In determining the amount of an award of compensation under the Act, the element of pain and suffering, often the most important consideration in determining the amount of damages to be awarded in a personal injury action, has no place. "The relation imposed by these laws is purely economic in character as distinguished from the creation of a new right in the employee sounding in tort. The new obligation of the employer to his employee is rather a wage obligation in the nature of an undertaking thrust upon the employer, as a part of the contract of employment, to become a party to an insurance policy created by law and to be entered into as an additional consideration for services rendered by the employee. This proposition is true, because in lieu of a possible opportunity formerly belonging to the injured employee to be made whole in a sum for damages fully commensurate with his peculiar loss, he would be compelled under an insurance or Compensa-

tion Act to accept a stipulated amount admittedly having no relation to his injury, but measured on the basis of his relative economic position in the community, viz.: the amount of his wages. This is not a just basis to compensate the employee for his injury, if his new right is to be classified' in the same category in which his old right belongs, viz.: a means to redress a private wrong. The reason for such a law must be to require the employee to accept, against his former precarious right to adequate damages, the entirety, not only for himself, but for all members of his class, of receiving in case of injury, a stipulated sum computed, not independently as to each party injured on the basis of loss peculiar to his own personal injury, but relatively as to all in accordance with their respective earning capacities.'' (Boyd on Workmen's Compensation, 155, 156.)

As this court has heretofore indicated, the Act does not afford a new method of atonement for injury inflicted, but merely requires industry to relieve society of the care of manpower wrecked in the industry (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973), and in *Clark* v. *Olson*, above, we did not hold that Clark could not recover damages from Olson because he had already received an amount which would make him whole for the injury suffered, but because the legislature, whether purposely or by inadvertence, had taken away his right to maintain an action for damages and made his right to receive compensation under the Act exclusive. This right was restored by Chapter 138, Laws of 1933, in such a manner as to relieve the industry of a portion of the burden otherwise resting upon it, in case the injured party should receive full atonement for the injury from the tortfeasor, thus indicating the legislative understanding that the compensation awarded under the Act was but remotely connected with the damage suffered by the injured party. Since this change in the law has been made such a case as this cannot arise in the future.

When, therefore, a philanthropic insurance company has seen fit to atone for the injury inflicted by an independent tort-feasor at the time when the law provided for no recovery of damages, and on a claim which was not legal at the time of the injury, the acceptance of such atonement cannot in any manner constitute a bar to the right of the injured party to receive compensation under the Act, which is merely a continuation of wages under the contractual relation between the employer and the employee, to do justice and to prevent the disabled employee from becoming a burden on society. The fact that in the instant case the injured employee had, at the time she presented her claim for compensation, a sum of money which might prevent her becoming a burden on society, is no more pertinent when she received that sum as a result of negotations with the insurance carrier, not liable, than if it had been the result of frugal living resulting in the building up of a reserve fund from wages theretofore paid.

For the reasons stated the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied February 3, 1937.