WILLIAMS, Appellant, *v.* INDUSTRIAL ACCIDENT
BOARD, Respondent.

(No. 7,912.)

(Submitted September 28, 1939. Decided November 1, 1939.)

[97 Pac. (2d) 1115.]

*Mr. Frank W. Mettler,* for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Mr. M. J. Thomas,* for Respondent, submitted a brief, and argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting with consent of both parties, delivered the opinion of the court.

On September 6, 1930, the plaintiff, while in the employ of the Montana Coal and Iron Company at Washoe, Montana, was injured. That company was then enrolled under Plan 3 of the Workmen's Compensation Act.

Thereafter application was made to the respondent for compensation on account of the injuries thus suffered. Investigation having been made by the board, the plaintiff was awarded $18.00 per week, and that amount paid for twenty-five weeks.

In March, 1931, a question arose as to whether plaintiff was entitled to further compensation, and in order to learn the facts in that regard, the board requested the plaintiff to come to Helena at its expense. Plaintiff complied with that request and came to the defendant's office in the City of Helena. The plaintiff, at respondent's request, went to the office of Dr. S. A. Cooney, in Helena, for the purpose of having an examination made of the injuries resulting from the above-mentioned accident. That doctor made an examination and filed with the board a written report thereof.

On March 21, 1931, the plaintiff filed with the board his petition, as follows:

"Industrial Accident Board,

Helena, Montana

Gentlemen:

I was accidentally injured on September 6th, 1930, while employed by the Montana Coal and Iron Company. I received a broken ankle in two places, broken nose and cuts and bruises. I have received various sums in compensation from the Industrial Accident Fund. Recently I came to Helena for an examination by physicians designated by the Board. Dr. S. A. Cooney rates my disability at approximately 20% of the loss of the usefulness of my right foot.

I have carried on negotiations with the Board tending to a compromise settlement of my claim and as the result of these negotiations I desire to compromise my claim against the Industrial Accident Fund by the payment to me of $532.11, in addition to all sums heretofore paid me, in full and final compromise settlement of my claim for compensation arising out of my accidental injury of September 6th, 1930.

I therefore hereby petition the Industrial Accident Board to make an order approving a compromise settlement, wherein the Industrial Accident Fund is to pay me $532.11 in a lump sum, in full and final settlement of my claim for compensation, arising out of my said accident on said date.

Yours very truly,

(signed) W. R. WILLIAMS"

On March 31st of that year the board made an order granting plaintiff's petition and directed that the plaintiff be paid $532.11, "in full and final compromise settlement of his claim for compensation arising out of his injury of September 6, 1930." Nothing further was heard of this matter by the board until October, 1934, when divers and sundry persons wrote the board requesting that the case be reopened. The board refused to grant that request. In January, 1935, Frank W. Mettler, Esq., counsel for the plaintiff, in a letter to the board, requested that the cause be reopened, and on May 20, 1935, the plaintiff, through his counsel, filed with the board a petition praying that the case be reopened. A hearing was had upon that petition and on May 11, 1936, the respondent denied such petition upon the ground that a full lump sum settlement having been made, the board was thereby precluded from reopening the case by reason of the provisions of section 2952, Revised Codes of 1935. A petition for rehearing was duly made and denied. Thereupon the appellant appealed to the District Court of the Thirteenth Judicial District. The cause came regularly on for hearing before that court on April 8, 1937. Witnesses were sworn and testified therein, and on October 1, 1937, the court made an order dismissing the appeal and judgment was entered accordingly. This appeal is from that judgment.

Counsel for the plaintiff is proceeding upon the theory that in the settlement of March 31, 1931, all of the injuries growing out of the accident of September 6, 1930, were not considered.

While the legislature evidently intended in the enactment of the Workmen's Compensation Act that the monthly payments should be the rule and lump sum settlement the exception (*Davis* v. *Industrial Accident Board*, 92 Mont. 503, 15 Pac. (2d) 919; *Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615), nevertheless, the board is authorized to make a lump sum settlement, for section 2926, Revised Codes of 1935, provides:

"The monthly payments provided for in this act may be converted, in whole or in part, into a lump sum payment, which lump sum payment shall not exceed the estimated value of the present worth of the deferred payments capitalized at the rate of five per centum per annum. Such conversion can only be made upon the written application of the injured workman, his beneficiary, or major or minor dependents, as the case may be, and shall rest in the discretion of the board, both as to the amount of such lump sum payment and the advisability of such conversion. The board is hereby vested with full power, authority, and jurisdiction to compromise claims and to approve compromises of claims under this act; and all settlements and compromises of compensation provided in this act shall be absolutely null and void without the approval of the board."

A careful consideration of all of the facts in relation to this cause and the law applicable thereto, compels the conclusion that a number of insuperable obstacles stand in the way of plaintiff's recovery. Among these are the following:

First. Dr. Beltzer attended the plaintiff immediately following the accident in question and continued to so attend him for a number of months thereafter. On September 11th, following the accident, Dr. Beltzer, in his report to the state board a few days after the accident, among other things, stated that the plaintiff, in relating to the doctor the facts as to how the accident occurred, said: "I was helping on the joy loading machine when a large piece of rock fell from the roof striking me on the head, back, & leg."

On January 29th Dr. Beltzer filed with the defendant board a certificate as to the plaintiff's physical condition, in which it is stated that the plaintiff was unable to resume work; that his earning capacity had been impaired, but that plaintiff's disability would not be permanent. Again on February 28, 1931, the same doctor filed his certificate with the board, showing substantially the same condition set forth in that of January 29th, above, and again stated that in the doctor's opinion, the plaintiff's disability would not be permanent. It will be

240

borne in mind that the purpose of the appellant's coming to Helena was to ascertain if he was then suffering disability as a result of the accident of September 6, 1930, and if so, the extent of such disability; further, that the appellant then talked with the chairman of the board and with Dr. Cooney concerning his physical condition and the injuries resulting from the accident in question, but to neither did he make mention of any back injuries. The board then caused an examination of the plaintiff to be made by Dr. Cooney. Such examination was made and a report thereof filed with the board. The settlement was concluded after all of this information had been acquired.

We agree with the statement of counsel for the appellant that the defendant occupies a position of trust in relation to this plaintiff. Not only does that relationship exist between the board and this plaintiff, but it extends, as well, to every person who is entitled to receive benefits from the funds of which the board is made trustee; and, further, since: "The fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from industrial conditions, and that the economic loss caused by such accidents shall not necessarily rest upon the public but that the industry in which the accident occurred shall pay, in the first instance, for the accident." (*Landeen* v. *Toole County Refining Co.*, supra). That trust relation extends to the public in general. Wide discretion is vested in this board. A very high degree of good faith, impartiality, and fairness should be shown by the board in dealing with each applicant; and what is said by this court in the *Landeen Case* above, in speaking of the discretion lodged in the board in relation to making a lump sum settlement, applies to all of the dealings of the board, as well. The court there remarked: "The determination of this question requires the exercise of a sound discretion. The board is more favorably situated than is the court to familiarize itself with the circumstances surrounding the applicant, to consider his needs, and the results which probably will follow action grant-

ing or denying the application; the power 'must be exercised in conformity with the spirit of the law and so as to best promote the ends of justice.' (Id.; *Reteuna* v. *Industrial Commission*, 55 Utah, 258, 185 Pac. 535.)''

If it were charged, or if the evidence showed that the plaintiff had been misled to his prejudice by the action of the board, or that advantage had been taken of the plaintiff; or, in other words, if the board were guilty of fraud in connection with the settlement, then that might vitiate the whole transaction; but in this case there is no charge of fraud. There is not one scintilla of evidence of fraud—either actual or constructive. Not only that, but counsel for the plaintiff, in oral argument, stated most emphatically that it was not his purpose to charge that the board was guilty of fraud in any of its dealings with the plaintiff. It clearly appears that the board, prior to making the lump sum settlement, made a careful investigation of the facts and afforded the plaintiff an opportunity of fully presenting the facts in relation to the injuries growing out of the accident in question; and if, under these circumstances, and in the light of the facts herein, the lump sum settlement so made may be set aside, it is difficult to understand how the respondent board could safely make a lump sum settlement in any case.

Second. Section 2952, Revised Codes, 1935, provides: ''The board shall have continuing jurisdiction over all its orders, decisions and awards, and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter, or amend any such order, decision or award made by it upon good cause appearing therefor. Provided, that the board shall not have power to rescind, alter, or amend any final settlement or award of compensation more than two years after the same has been made, and provided further that the board shall not have the power to rescind, alter or amend any order approving a full and final compromise settlement of compensation. Any order, decision, or award rescinding, altering, or amending a prior order, decision, or award, shall have the same effect as original orders or awards.''

These provisions are so altogether plain, clear, and understandable, that no interpretation is necessary. The language used explains itself. As to the nature of the settlement made between the plaintiff and the board, we need look no further than the language used in plaintiff's application, and that made use · of in the board's order granting that application. The applicant says that this settlement shall be "in full and final compromise settlement of my claim for compensation arising out of my accidental injury of September 6th, 1930." The order of the board granting plaintiff's application and approving the lump sum settlement is, in part, as follows: "In full and final compromise settlement of his claim for compensation arising out of his injury of September 6, 1930." The record discloses, too, that appellant testified, in substance, that before this lump sum settlement was made, the chairman of the board informed him, in substance, that if that settlement were made that he (the appellant) would be all through and that this case would be closed forever.

The board is a creature of the statute. Any and all authority which it possesses comes from the statute. Its power to act is subject to the limitations of the statute. By virtue of the provisions of section 2952, above, the board was powerless to reopen the cause. The settlement was consummated on March 31, 1931, and more than two years had elapsed after the lump sum settlement had been made before any application to amend, alter, or rescind such settlement was made.

Third. This action is barred by the provisions of section 2955, Revised Codes of 1935,—this because the order made by the board on the 31st day of March, 1931, was a final order and the petition to reopen the case was not filed until May 21, 1935. (*State ex rel. Roundup Coal Mining Co.* v. *Industrial Accident Board*, 94 Mont. 386, 23 Pac. (2d) 253.) Other cases in point generally are *Shugg* v. *Anaconda Copper Mining Co.*, 100 Mont. 159, 46 Pac. (2d) 435; *Meznarich* v. *Republic Coal Co.*, 101 Mont. 78, 53 Pac. (2d) 82.

Counsel for the plaintiff cites the case of *Clark* v. *Olson*, 96 Mont. 417, 31 Pac. (2d) 283, and the case of *In re Maury*, 97

Mont. 316, 34 Pac. (2d) 380. An examination of these cases disclose that they have no application to the facts in this case.

The evidence discloses beyond question that the plaintiff is in needy circumstances. A feeling of humanitarianism may dictate one course of action to us as individuals in order to meet that need; but as officers, we act in a representative capacity and have such powers and only such as the law gives to us. The individual members of the defendant board, like all other officers, may not lawfully act as their whim or caprice may dictate, but only in accordance with that authority with which the law clothes them. Any other doctrine is destructive of the fundamental principles of our whole system of government. That is but another way of saying that if "A" as an individual, feels impelled to put his own hand into his own pocket and extract therefrom his own money or other property, and give of that to his less fortunate brother, such act is to be highly commended; but "A" as an officer may not put his hand into the pocket of another and satisfy "A's" individual feelings of generosity, by giving to another that which does not belong to "A" and which the law does not authorize "A" to give. Experience teaches that human rights and property rights are much more secure when rested upon the firm foundation of established law than when made dependent upon the whim or caprice of an individual, a board, a commission, or a bureau.

The judgment of the district court confirming the action of the respondent board is in accordance with the law and, therefore, must be and it is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.

Rehearing denied January 26, 1940.