JOHN YURKOVICH, Plaintiff and Respondent, v. INDUS-
TRIAL ACCIDENT BOARD, Defendant and Appellant.
No. 9787.
Submitted May 20, 1957. Decided August 9, 1957.
As Amended August 15, 1957
314 Pac. (2d) 866.

78

Mr. L. V. Harris, Helena, for appellant.

Mr. J. H. McAlear, Red Lodge, Messrs. Kelly, Battin & Crawford, Billings, for respondent.

Mr. Harris, Mr. McAlear, Mr. William T. Kelly argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal by the Industrial Accident Board from a judgment for plaintiff by the district court of Carbon County, the Honorable Ben Harwood, judge, presiding.

Following a hearing the Industrial Accident Board entered its findings that "John Yurkovich was injured in an accident arising out of and in the course of his employment by Brophy Coal Company on or about January 19, 1955. At the time of his accidental injury, his employer was enrolled under Plan Three of the Workmen's Compensation Act.   *   *   *   That no claim for compensation in writing, under oath was presented to the Industrial Accident Board by the claimant or anyone in his behalf, within twelve (12) months after the happening of the accident."

The Board entered its order adopting its findings and "ordered that the petition of John Yurkovich for determination of disability arising out of accidental injury on January 19, 1955, be, and the same is hereby denied and dismissed."

Plaintiff thereafter filed his petition for rehearing which was denied. Whereupon plaintiff Yurkovich appealed to the district court of Carbon County which court, after trial, entered a judg-

ment for Yurkovich, setting aside the Board's findings, conclusions, its order based thereon, awarded Yurkovich compensation for permanent partial disability for his said injuries of January 19, 1955, and ordered that he be paid compensation within limits of five hundred weeks.

The controlling facts are not in dispute.

It is conceded that the plaintiff, John Yurkovich, was for several years prior to and on January 19, 1955, employed by the Brophy Coal Company; that on January 19, 1955, plaintiff while so employed, in the course of and arising out of the hazardous employment being underground coal mining, suffered an industrial injury when a slab of rock some fifteen feet in length and weighing some three or four hundred pounds, fell from the roof of the mine onto the back, neck and shoulders of plaintiff, knocking him down, and injuring his spine; and that one Dominic Grosso was present and working with plaintiff at the time of the accident. The falling rock caught Grosso but only pullled his cap off and put out his light. John McDonald, the mine foreman and plaintiff's boss, was present at the time of accident or a few minutes after the accident and discussed the happening.

At the time of the injury, plaintiff was of the age of 48 years, with no formal education, unschooled and with a wife and two minor children who were and are dependent on him for support; plaintiff and his employer, Brophy Coal Company, were covered by Plan Three of the Workmen's Compensation Act; the only kind of labor plaintiff was ever employed in was hard manual labor such as mining, having worked most of his adult life in the mines in Montana. Plaintiff had been employed by the Brophy Coal Company for the past nine years, and had never drawn workmen's compensation.

It is further conceded that at the time of the industrial injury, plaintiff was receiving wages of $21.38 per day, which converted to a weekly wage was $128.28 per week.

From the record it appears that mining, and especially coal mining, was the only kind of remunerative work plaintiff was

trained, to do, which in the story of the mine requires "a strong back"; that it requires frequent heavy lifting, and a great deal of such labor must be done on the knees; that as a result of plaintiff's injury, Dr. Perry M. Berg diagnosed claimant's condition as an "acute contusion of the low back region resulting in chronic low back strain on a basis of ligamentous injury. Possible injury of the intervertebral disc. * * * Patient is not able to return to a job which necessitates frequent heavy lifting."

The record discloses affirmatively that as a result of plaintiff's industrial injury he was permanently partially disabled, unable to perform his accustomed heavy physical work, and as a result of said accident plaintiff had to seek lighter employment.

Since March 20, 1955, plaintiff has been employed as a clerk in the state liquor store in Red Lodge at a salary of $250 per month which converted to a weekly wage is $57.69; this compares to his wage before injury of $128.28 per week or a difference of $70.59 per week. Plaintiff was not gainfully employed from February 1, 1955, to March 20, 1955.

The record is clear that the employer received actual knowledge of the accident on the day it happened, as the mine foreman was present when the rock fell striking and injuring plaintiff, according to the report of the accident to the Board by the Brophy Coal Company. However the employer, Brophy Coal Company, did not notify or send in the employer's first report of injury to the Board as required by R.C.M. 1947, section 92-808, until about November 7, 1955. The Board returned the employer's first report of injury to the Brophy Coal Company on November 8, 1955, to have it signed in ink, yet the requirement of the Board of the first report of injury requires that the employer fill out report Form 37 after every accident. Said Form 37 also requires that employer have the injured workman fill out Form 37-A, the employer to return same to the Board with employer's first report of injury. On November 7, 1955, the Board had been notified by the employer that the workman,

John Yurkovich, had suffered an industrial injury. The form completed, as the Board required, was received and filed by the Board on November 10, 1955.

November 9, 1955, the plaintiff, John Yurkovich, wrote to the Board for information giving the Board his name; that he was injured on January 19, 1955, at the Brophy mine; that he believed the mine had made a report to the Board; that the fall of rock on his back had hurt his neck and back, and asked if he could have X-rays taken. Plaintiff also asked the Board "would you please inform me as [to] what I am to do about it I thank you kindly."

The Board's answer, signed by W. W. Casper, Secretary, to plaintiff's letter was dated November 15, 1955, and was as follows: "Answering yours of Nov. 9, about your accidental injury of Jan. 19, 1955, you are entitled to medical treatment, and hospitalization if necessary, provided such bills are incurred within one year from date of accident and do not exceed a total of $1,500.00.

"*Therefore you may consult a doctor now.* We enclose the forms upon which he should submit his report and his bill." Emphasis supplied.

The Board gave the plaintiff no information in regard to the form required in relation to compensation, but by this letter of authorization for medical treatment, the Board recognized that the plaintiff had suffered an industrial compensable injury. The Board at that time also had the employer's report before it of plaintiff's accidental injury.

While it may not be the duty of the Board to go out and ██ solicit claims, as intimated by counsel for such Board, yet we deem it the duty of the Board to fully advise an industrial injured workman, when he comes to the Board as here and asks for information, as to what he should do. The Board as trustee of the funds which are provided for the benefit of such workmen as beneficiaries, and when dealing with the beneficiary, is under a legal and moral duty to deal fairly with him and to

disclose to him all matters affecting his interests, either beneficially or otherwise.

R.C.M. 1947, section 86-301, provides as follows: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, *concealment,* threat, or adverse pressure of any kind." Emphasis supplied. Compare Restatement, Trusts, section 170, page 431; Williams v. Industrial Accident Board, 109 Mont. 235, 240, 241, 97 Pac. (2d) 1115.

Here, within the year after the injury, the Board on the information it had obtained from the employer and the plaintiff workman, authorized medicines, medical treatment by doctors and hospitalization if necessary, and thereby recognized that the plaintiff had suffered a compensable industrial accident. It was the duty of the Board standing in the position of trust in relation to this plaintiff, after receiving such information of his industrial accident, to see to it that his rights under the law were protected. A very high degree of good faith, impartiality, and fairness is to be shown by the Board in protecting its beneficiaries' interests, and in dealing with such claimants. From the uncontroverted testimony of the plaintiff it is apparent that he was depending on the Board, after his letter to them, to fully advise him of what he should do to protect his rights under the law. From the record it is apparent that plaintiff was misled to his prejudice by the Board's withholding, perhaps unconsciously, the information that plaintiff was required to file a claim under oath, thereby concealing such requirement from him, and by so doing misrepresenting to plaintiff that all he was entitled to was X-rays, doctor's services and hospitalization. The action and nonaction of the Board in this case cannot be condoned as it flies in direct conflict with the law of trusts as well as the import of the Workmen's Compensation Act. See Williams v. Industrial Accident Board, supra.

In 90 C.J.S., Trusts, section 247, pages 225, 237, 238, the rule is stated: "In other words, the trustee is under a duty fully to

inform the beneficiary of all facts relating to the subject matter of the trust which come to the trustee's knowledge and which are material to the beneficiary to know for the protection of his interests.'' See cases cited thereunder.

The Workmen's Compensation Act was enacted for the benefit of the employee. The Industrial Accident Board is a state board created by legislative act to administer this remedial legislation, and under the act the Board's first duty is to administer the act so as to give the employee the greatest possible protection within the purposes of the act. Compare Miller v. Aetna Life Ins. Co., 101 Mont. 212, 220, 53 Pac. (2d) 704. Under the law of trusts, the principles of equity are invoked to promote justice, but never to defeat justice.

It is a wise and humane requirement of the law of trusts to permit a person, in equity, under such circumstances, additional time in which to perfect his valid claim in order to protect his rights. This is particularly so when the only entity that can possibly object is the person or persons or entity which has taken advantage of his ignorance and his trust, by imposing upon him an unjust and inequitable settlement and in refusing to perform its duty.

We again state that the Workmen's Compensation Act is not legislation for the benefit of doctors, neither is it an act for the benefit of lawyers, nor for the benefit of the Board. This act is fundamental legislation enacted first for the protection and benefit of the injured workman, his wife and children, and other dependents. By force of the law the employee surrenders his right of an action *in tort* for injury or death. The act however assures him and his dependents of the protection of certain benefits in case of injury or death.

Secondly, the act fixes a limited liability of the employer so that the economic loss caused by such accidents shall not rest upon the employee or the public, but that the industry in which the accident occurs shall pay in the first instance for the loss occasioned by such accident.

In construing a statute the whole act must be read together,

■ and where there are several provisions or particulars such a construction is, if possible, to be adopted as will give effect to all. Compare Corwin v. Belswanger, 126 Mont. 337, 339, 251 Pac. (2d) 252.

R.C.M. 1947, section 12-202, in part, provides:

"The codes establish the law of this state respecting the subjects to which they relate and their provisions and *all proceedings under them are to be liberally construed* with a view to *effect their objects and to promote justice.*" Emphasis supplied.

This act, in regard to hazardous employment, is compulsory. ■ The court is required to give effect to the objects of a statute and must construe it so as to promote justice, and to give such construction thereto as will preserve the constitutional rights of the parties.

Each case under the Workmen's Compensation Act must be ■ determined on its own facts and circumstances and the law applicable.

In Radonich v. Anaconda Copper Min. Co., 91 Mont. 437, 446, 8 Pac. (2d) 658, 661, this court said: "The Industrial Accident Board is a layman's court. * * * The intention of the act is to make practice and procedure before the Board as simple as possible. The act calls for the speedy adjustment of industrial accident cases, regardless of technical forms and requirements * * *"

Again, in Shugg v. Anaconda Copper Min. Co., 100 Mont. 159, 169, 46 Pac. (2d) 435, 439, this court said in referring to the Board's hearing and determination of claims for compensation that "it [the Industrial Accident Board] is the poor man's court, or *rusticum forum,* wherein a claimant may present his cause without the assistance of counsel, and, therefore, the strict rules of pleading and practice should not be applied. The Act calls for speedy adjustment of accident cases, regardless of technical forms and requirements * * *"

R.C.M. 1947, section 92-838, specifically commands the courts that "Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court."

This is a specific mandate to the courts, and this court has consistently held that this mandate means the act shall be liberally construed in favor of the claimant. Compare Grief v. Industrial Accident Fund, 108 Mont. 519, 526, 93 Pac. (2d) 961.

In Tabor v. Industrial Accident Fund, 126 Mont. 240, 242, 247 Pac. (2d) 472, 473, this court said: "The Workmen's Compensation Act must be liberally construed *to accomplish its intended purpose,* and construed in favor of the injured workman and his dependents." Emphasis supplied. State ex rel. Morgan v. Industrial Accident Board, Mont, 300 Pac. (2d) 954, and cases therein cited.

Where as here the employer was engaged in the hazardous business of coal mining, and the employee plaintiff was so engaged by his employer at the time of accidental injury, the statute makes it mandatory that both the employer and employee shall be bound by the compensation act. The second paragraph of section 92-207, R.C.M. 1947, specifically provides that "any employer engaged in the business of coal mining, or the employees of an employer so engaged, shall be *compelled to be bound* by one of the compensation plans provided by this act." Emphasis supplied.

R.C.M. 1947, section 92-1105, as pertinent here, provides:

"It is the intent and purpose of compensation plan No. 3 that each industry, trade, occupation, or employment coming under the provisions of said plan shall be liable and pay for all injuries happening to employees coming under the provisions of said plan, and that all funds collected by assessments as herein provided shall be paid into one common fund to be known as the industrial accident fund, which fund shall be devoted exclusively to the payment of all valid claims for injuries happening in each industry, trade, occupation, or employment coming under the provisions of compensation plan No. 3."

Under the facts and circumstances in this case the state Industrial Accident Board, in equity and to promote justice, may not now contend that it did not receive a proper claim from plaintiff. The Board had plenty of time, and it was its

duty to notify the plaintiff to present a proper claim if the information given to the Board by the employer and the plaintiff was not sufficient to protect his interests. The Board, according to the record, took no action to protect plaintiff's interests, and made no investigation of its own to determine whether plaintiff's injuries would entitle him to workmen's compensation. Neglecting its duty, the Board is not in position to assert the statute of limitations.

The plaintiff did swear to a full and complete statement and claim of injury on January 25, 1956, and the same was filed with the Board on January 26, 1956. Of course the jurat is no part of the claim. Under the circumstances here the claim was timely.

The district court was correct in its finding and in entering judgment in favor of plaintiff for payment of compensation within the limits of 500 weeks. However, the district court, in determining the payments to be made by the Board to plaintiff, adopted the schedule of payments set forth in section 1 of chapter 253, Laws of 1955, which act did not become effective until July 1, 1955. See R.C.M. 1947, section 43-507. There is nothing in this act to show any intention of the legislature to give a retroactive application thereto, as the accident herein considered occurred January 19, 1955.

The act and schedule in force at the time of the accident, and applicable herein, was section 1 of chapter 38, Laws of 1953. It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made that such was the intention of the legislature. R.C.M. 1947, section 12-201. Compare Chisholm v. Vocational School, 103 Mont. 503, 510, 64 Pac. (2d) 838; Clark v. Olson, 96 Mont. 417, 31 Pac. (2d) 238; Aetna Casualty & Surety Co. v. Industrial Accident Comm., 30 Cal. (2d) 388, 182 Pac. (2d) 159; Lynch v. State, 19 Wash. (2d) 802, 145 Pac. (2d) 265; Subsequent Injuries Fund (State) v. Industrial Accident Comm., Cal. 310 Pac. (2d) 1, 4, 6.

The judgment of the district court is therefore modified to conform with the schedule of payments as prescribed by section

3 of chapter 38, Laws of 1953, now R.C.M. 1947, section 92-703, in this case amounting to $28.50 per week within the limits of 500 weeks, and as so amended the judgment of the district court is otherwise affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ADAIR, concur.

MR. JUSTICES ANGSTMAN and CASTLES:

We agree with the result reached in the foregoing opinion, but not with all that is said therein.