No. 86-310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

LAVERNE I. LARSON,

        Claimant and Appellant,

  -vs-

WILLIAM S. CRISSMORE, Employer,
     and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Trieweiler Law Firm; Judith L. Wang argued, Whitefish,
        Montana

    For Respondent:

        Warden, Christiansen, Johnson & Berg; Stephen C. Berg
        argued, Kalispell, Montana

---

Submitted: April 9, 1987

Decided: August 5, 1987

Filed: AUG 5 - 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

LaVerne I. Larson appeals from a June 3, 1986, denial of benefits requested in addition to those granted to him by the Workers' Compensation Court between April 15, 1971, and April 3, 1980.

We affirm the lower court's decision and remand to determine proper rates for the temporary total and permanent disability benefits. We order payment of temporary total disability benefits not to exceed 300 weeks in addition to the permanent disability benefits to which claimant is entitled and as instructed below.

The issues on appeal are:

1. Under the 1971 Workers' Compensation laws, was claimant entitled to additional temporary total disability benefits up to 300 weeks and should this amount have been granted in addition to the 500 weeks of permanent disability benefits already granted to the claimant? (Emphasis added.)

2. Did the lower court err when it denied claimant's request for a discretionary award by ruling that claimant was required to show that he had lost both hands, or both arms, or both feet, or both legs, or both eyes?

3. Was claimant paid incorrectly low disability benefit rates and was he entitled to permanent partial or permanent total disability benefits?

In December 1985, the appellant filed a petition for hearing with the Workers' Compensation Court. The petition generally sought benefits in addition to those paid to the appellant from April 15, 1971, through April 3, 1980. A hearing was held on March 5, 1986, before the Workers' Compensation Court Judge Timothy W. Reardon. Following the

receipt of post trial briefs and proposed findings and conclusions, the court entered its judgment based on its findings of fact and conclusions of law, dated June 3, 1986. The court's decision denied additional benefits to the claimant. This appeal followed.

At the time of trial, on March 5, 1986, claimant was a 59 year old married father of 4 children, with one daughter still dependent upon him for support.

Claimant's work history includes railroad work as a switch tender, switchman, and road brakeman. He has also worked as an oiler, laborer, woods worker, sawmill laborer, welder, service station mechanic and attendant and as a heavy equipment operator.

Prior to his accident on April 15, 1971, claimant owned his own business, Larson Logging, and he was a healthy and active person. His accident occurred when a winch he was operating pulled a tree down which landed on his head. His injuries required multiple surgeries and treatments. Claimant's injuries were primarily to his head and neck as well as his back.

Claimant was diagnosed as having a herniated disk which was surgically removed in August 1971. On June 28, 1973, cervical fusion was performed and an abnormal disk removed. On January 31, 1974, a fusion was performed from his L-4 vertebrae to his sacrum.

In 1976, claimant fell off a flat-bed truck after loading some equipment onto it. He injured his head and was treated at the Veterans' Administration Hospital in Spokane, Washington as an in-patient from September 28 though October 15, 1976. His main complaint was that he suffered from headaches. A brain scan was performed which suggested that

claimant's headaches were related to the injury to the temporal mandibular joint on his right side.

During the summers of 1983 and 1984, claimant took a job as brushcat operator because he needed the income. He could take breaks as needed but at the end of the day he would take pain pills and soak in a bathtub to ease the pain. In 1985, he did not take that position because he was physically unable to do so. He has done a few miscellaneous welding and other tasks but basically has not worked since 1984.

Claimant now has a limited ability to move his dorsal spine which affects his general mobility. Lower back motion and motion in his cervical spine is also less than normal. Muscles in his right hand have atrophied and he can not reach, grasp with or flatten out his dominant right hand. He does not have full use of one of his feet and has no hot or cold sensation in his feet. He can sit for about fifteen minutes before getting lower back pains. He is no longer a very coordinated person and cannot work, fish or hunt.

In his present physical condition, claimant is unemployable. According to the lower court's findings, given his age, limited education, work history and multiple major surgeries, claimant is totally disabled from competitive employment.

Claimant's Workers' Compensation benefits were discontinued on April 3, 1980, after he received 26 weeks of temporary total disability benefits at $60 a week and 500 weeks of permanent partial benefits at $55 per week. Claimant currently receives $510 a month from Social Security as his only source of income.

Claimant believes he incorrectly received only 26 weeks of temporary total disability benefits and is entitled to

- 4 -

between 222.56 and 274 additional weeks of temporary benefits as well as the maximum number of permanent partial and permanent total disability benefit weeks. At a minimum, claimant argues he is entitled to 222.56 weeks of temporary total disability benefits pursuant to § 92-701, R.C.M. (1947). This minimum number of weeks is based on a statement by Dr. Klassen on February 23, 1975, that claimant would not reach maximum healing for an estimated six months.

With a "liberal construction" mandate claimant argues that a different calculation entitles him to a maximum of 300 weeks of benefits. We agree. This computation is based on Dr. Blaisdell's opinion and claimant's testimony concerning healing time following spinal injuries. Dr. Blaisdell stated the maximum healing would occur between six months and two years after the last surgery. Claimant's last lumbar surgery was January 31, 1974.

Claimant contends that the court below concluded that claimant reached a maximum healing two years after January 31, 1975 or on January 31, 1977. Computing the benefit weeks from 1971 through 1977, he concludes that they add up to 302.12 weeks thus entitling him to 300 weeks of temporary total disability benefits minus the 26 weeks of temporary total disability already paid to him.

Respondent agrees § 92-701, R.C.M. (1947) limits temporary total disability benefits to 300 weeks from the date of injury. However, § 92-708 of that code states the total period for which compensation may be paid cannot exceed 500 weeks and that compensation shall run consecutively, not concurrently. Respondent contends the lower court did not err in applying the black letter of the law and, if anything,

appellant was actually overpaid and is entitled to no further benefits.

Conflicting testimony exists as to when claimant's temporary total disability status actually ceased. An examination of the record does not answer that question. We hold that the claimant is entitled to temporary total disability benefits of up to 300 weeks. This should be sufficient to help the Workers' Compensation Court in determining the proper amounts due on remand.

The parties agree that claimant was entitled to some temporary disability benefits and some type of permanent disability benefits. The problem here is whether claimant should have been granted benefits in excess of the 526 weeks of benefits he already received. Inclusive in this issue is whether claimant's temporary total disability was actually only 26 weeks in duration or whether it extended to 300 weeks duration (274 plus the 26 he has received) as claimant contends; whether he is entitled to the full 500 weeks of permanent total disability benefits, and whether he is entitled to any amount of permanent partial benefits.

Section 92-701, R.C.M. (1947) (amended 1969) was the applicable statute governing payment of temporary total disability benefits in 1971. The statute set out a payment schedule based upon the injured worker's wage and number of dependents. It states:

> Such compensation shall be paid during the period of disability, but for the period not exceeding three hundred (300) weeks from the date of injury . . . provided that after twenty-six (26) weeks of disability such compensation shall be decreased by the sum of $5.00 per week during the period of disability.

The purpose of the temporary total disability statute was to provide temporary total benefits during the claimant's healing period.

In 1971, the term temporary total disability was not specifically defined in the Workers' Compensation Act. It was amended in Chap. 23, Laws 1975. The later enacted definition has been interpreted to involve a two-pronged test. First, a claimant must not have been as far restored as the permanent character of his injuries will permit. Secondly, the claimant must experience a total loss of wages. Wilson v. Sun River Cattle Co. (Mont. 1983), 670 P.2d 931, 40 St.Rep. 1509.

Although testimony was presented on claimant's temporary total disability period, no finding of fact was made as to the actual duration of the healing period. In light of our decision on the rest of this issue, we remand this case for a determination of the extent of claimant's temporary total disability period and note that, in accordance with the applicable statute, claimant is allowed up to 300 weeks of temporary total disability benefits if he is found eligible.

This Court recognizes the legitimacy of granting a claimant different categories of benefits consecutively as a claimant comes to qualify for them. For instance, in Jones v. Claridge (1965), 145 Mont. 326, 331, 400 P.2d 888, 890, we stated:

> [W]e may now have, under a given set of circumstances, an award for temporary total disability payments during the period wherein the claimant is entirely disabled; . . . and an additional award (indemnity benefits) for loss of prospective future earnings as the result of permanent partial disability under § 92-709 . . .

Similarly, in McDanold v. BN Transport, Inc. (Mont. 1981), 634 P.2d 175, 179, 38 St.Rep. 1466, 1471, we stated:

> Construing the section liberally in favor of the injured worker as required under former Section 92-838, R.C.M., 1947, now Section 39-71-104, M.C.A., we hold that the period during which claimant received temporary total disability benefits under former Section 92-701, was separate from and in addition to the period during which he would receive benefits under 92-709, the specific injury "indemnity" statute. Therefore, the claimant here may not have exceeded his statutory benefits, depending upon the extent of his injury and the length of his healing period.

In this case the Court is further faced with interpreting and reconciling several inconsistent statutes in the 1971 code regarding the total number of weeks for which a claimant may collect benefits. We note § 92-708, R.C.M. (1947) (amended 1969) provides the total period for which compensation may be paid cannot exceed 500 weeks and that compensation shall run consecutively, not concurrently. Section 92-701, R.C.M. (1947) (amended 1969) provides that temporary total disabilities are limited to 300 weeks of benefits.

Appellant contends that limiting his benefits to a total of 500 weeks is internally inconsistent with the Workers' Compensation Act and with existing caselaw including the Jones and McDanold cases quoted above. We disagree and find § 92-708, R.C.M. (1947) (amended 1969) controlling. Other statutes in 1971 provided for more than 500 weeks of benefits. Section 92-702, R.C.M. (1947) (amended 1969), provided for an excess of 500 weeks of permanent total disability benefits in cases of hardship, but such exception

occurs only under the Board's discretion. Section 92-704, R.C.M. (1947) (amended 1969), provided for a maximum of 600 weeks for death benefits.

In construing a statute, the whole act must be read together and where there are several provisions or particulars, a construction is, if possible, to be adopted that will give effect to it all. Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 84, 314 P.2d 866, 870.

Recognizing that under special circumstances, the above cited statutes can give a worker more than 500 weeks, we find none here nor did the Board make an exception under its statutory discretionary power. Claimant, as previously noted, is entitled to no more than 500 weeks of compensation under § 92-708, R.C.M. (1947) (amended 1969), totalling temporary total disability benefits and permanent partial or permanent total benefits.

The lower court found the plain meaning of the statutes clearly acted to deny benefits at a 526 rate week level already received by the claimant between 1971 and 1975. However, the court went on to consider the possible effect of this Court's ruling in McDanold, supra, upon the case. In view of the fact that the claimant relied upon McDanold before the lower court and continues to rely upon it before this Court, we note that there are serious factual distinctions between McDanold and the case at bar: (1) as the Workers' Compensation Court noted, McDanold is an extremity case of 180 weeks which is significantly less than the 500 weeks whole-man partial disability entitlement of the claimant in this case; (2) the lower court stated that the permanent partial determination in McDanold was for a maximum benefit period of 180 weeks; (3) in McDanold, although

construing basically the same statutes relevant to the instant case, it does not construe the most important statute, § 92-708 which limits benefits to 500 weeks regardless of the class of disability. We find McDanold is not controlling in the case at bar.

Here, the interpretation is that claimant was entitled to up to 300 weeks of temporary total disability benefits and 200 weeks of permanent partial or permanent total disability benefits. Allowing a combination of the two the claimant is limited to the maximum number of weeks of benefits being 500 weeks.

Claimant's second issue is whether the lower court erred by denying his request for a discretionary award under § 92-702, R.C.M. (1947) (amended 1969), when it ruled that he did not show he had lost both hands, or both arms, or both feet, or both legs, or both eyes. He contends the court below used this incorrectly strict standard in its refusal to grant a discretionary award.

Under the Act in effect at the time of claimant's injury, additional permanent total disability benefits were provided for in hardship cases as follows:

> Such compensation shall be paid during the period of disability, but for the period not exceeding five hundred (500) weeks from the date of the injury. Provided, that in case of hardship and where the Board, in its discretion, deems it necessary, the Board may order compensation for such further period as it decides proper. Such additional compensation, if ordered, shall be limited to cases of total disability, permanent in character resulting from the loss of or the loss of use of both hands, or both arms, or both feet, or both legs, or both eyes. (Emphasis added.)

- 10 -

Section 92-702, R.C.M. (1947) (amended 1969).

The lower court properly denied claimant's request for a discretionary award as follows:

> The conditions for implementing the discretionary award do not exist. Claimant herein has not lost both hands, or both arms, or both feet, or both legs, or both eyes.

The statute requires a "loss of" or "loss of use" of both hands, arms, feet, legs or eyes when implementing a discretionary award. The lower court most certainly may refuse a discretionary award as it did here.

The last issue on appeal is whether claimant was paid an incorrectly low rate for his temporary total and permanent disability benefits.

Respondent contends this issue was not raised before the lower court and should not be addressed on appeal. We find the rate question was generally raised before the Workers' Compensation Court and is properly before this Court on appeal.

Claimant received 26 weeks of temporary total disability benefits at $60 per week and 500 weeks of permanent benefits at $55 per week. Claimant contends he is entitled to temporary total disability benefits of $65 per week for the duration of his temporary total disability of between 222 and 300 weeks. The parties stipulated that the appropriate temporary total disability rate is $65 per week and that appears to be the proper rate under § 92-701, R.C.M. (1947) (amended 1969). Additionally, claimant contends he was entitled to the maximum rate for permanent total disability benefits of $60 per week pursuant to § 92-702, R.C.M. (1947) (amended 1969), rather than the $55 per week he received.

Claimant's proper rate of compensation under §§ 92-701 and -2, R.C.M. (1947) (amended 1969) is based in part on the number of dependents of claimant and is subject to change when the number of dependents changes. We do not have sufficient evidence in the record to determine claimant's proper rate. Therefore, on remand we direct the Workers' Compensation Court to examine claimant's proper rate of compensation pursuant to §§ 92-701 and -2, R.C.M. (1947) (amended 1969).

Remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 12 -

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent with the majority decision to limit claimant's total benefits to 500 weeks.

I do agree with the majority decision to remand this case for a more specific determination of claimant's temporary total disability period but would hold that the claimant is entitled to temporary total disability in addition to the 500 weeks of permanent disability benefits he has already received.

The court is charged here with reconciling several inconsistent statutes in the 1971 Montana Workers' Compensation Code on temporary and permanent disability benefits and duration of total combined benefits.

Some 1971 statutes in the Act provided for more than 500 weeks of benefits in spite of the limitation in § 92-708, R.C.M. (1947). For example, § 92-702, R.C.M. (1947), provided for an excess of 500 weeks of permanent total disability benefits in cases of hardship under the Board's discretion. Section 92-704, R.C.M. (1947), provided for a maximum of 600 weeks for death benefits. This indicates to me that the 500 week limitation is not an absolute maximum but a general guideline for benefit limits.

The majority's decision could deprive a permanently totally disabled claimant from receiving any temporary total disability benefits. A permanently totally disabled claimant would be absolutely limited to 500 weeks under § 92-708, R.C.M. (1947) which is the same as the maximum total disability entitlement minus hardship factors under § 92-702, R.C.M. (1947). With this reasoning, it would appear that only permanently partially disabled claimants or ones who

suffer no permanent disability would be entitled to claim temporary total disability benefits.

I do not believe this was the intent of the Workers' Compensation Act in effect at that time.

In Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 314 P.2d 866, this Court stated:

> In construing a statute, the whole act must be read together and where there are several provisions or particulars, a construction is, if possible, to be adopted that will give effect to it all.

Id. at 84, 870.

The majority opinion would not "give effect to the whole act" as required by this Court in Yurkovich. These statutes can be harmonized by considering § 92-708, R.C.M. (1947) to be a general guideline for benefit limits rather than an absolute maximum. We have further held that:

> When two interpretations are a possibility, one favorable to the claimant and the other against him, the Act must be interpreted in a fashion favorable to the claimant. Geary v. Anaconda Copper Mining Co. (1947), 110 Mont. 485, 489, 188 P.2d 185, ____.

The majority's interpretation is not consistent with this mandate.

I would hold that appellant is entitled to up to 300 weeks of temporary total disability benefits and the 500 weeks of permanent partial or permanent total disability benefits he has already received. Such a holding would resolve the inconsistencies in the 1971 statutes and also be in keeping with the McDanold, Yurkovich and Geary cases.

Appellant, for his second issue, contends the trial court used an incorrectly strict standard to determine that a discretionary award under § 92-702, R.C.M. (1947) would not be granted.

It is apparent from the trial court's finding that it did not consider the full standard. Section 92-702, R.C.M. (1947) requires a "loss of" or "loss of use" of both hands, arms, feet, legs or eyes when implementing a discretionary award.

While the trial court may refuse a discretionary award, I would hold the lower court erred by not considering the "loss of use" standard in determining the existence of hardship. This issue should be remanded to the trial court for a determination of eligibility of hardship benefits utilizing the statutory standard of "loss of" or "loss of use" of both hands, or both arms or both feet or both legs, or both eyes pursuant to § 92-702, R.C.M. (1947).

I would reverse and remand the case.

_____
Justice

I concur with the dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice

- 15 -