No. 85-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

JETT HOLCOMB,

       Claimant and Respondent,

   -vs-

LOW TEMP INSULATION,  Employer,

    and

COMMERCIAL UNION INSURANCE COMPANY,

       Defendant and Appellant.

_____

APPEAL FROM:  The Workers' Compensation Court of the State of
Montana, The Honorable Timothy Reardon, Judge
presiding.

COUNSEL OF RECORD:

    For Appellant:

        Anderson, Brown, Gerbase, Cebull & Jones; Steven
Harman, Billings, Montana

    For Respondent:

        Charles Hingle, Billings, Montana

_____

Submitted on Briefs: August 21, 1986

Decided:    December 30, 1986

Filed:  DEC 30 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Low Temp Insulation and Commercial Union Insurance Company appeal an order from the Workers' Compensation Court denying their motion for a new trial.

Two issues are raised on appeal:

(1) Whether the Workers' Compensation Court had jurisdiction to rescind a final settlement more than four years after it was approved by the Division of Workers' Compensation?

(2) Whether at the time of final settlement in 1979 the insurance company had a duty to advise the claimant of the difference between "impairment" and "disability."

We reverse.

Jett Holcomb injured his knee and neck on January 25, 1979 while working for Low Temp Insulation in Billings, Montana. Low Temp's insurance carrier, Commercial Union Insurance, began paying Holcomb total disability benefits in June, 1979.

Dr. William Walton, an orthopedic surgeon in Billings, was the treating physician who had previously operated on Holcomb's back as a result of a 1963 industrial accident. Dr. Walton referred Holcomb to a Dr. Maciolek for an arthritis evaluation. Dr. Maciolek reported that in his opinion Holcomb had degenerative arthritis of the cervical spine.

On November 15, 1979, Dr. Walton submitted a Certificate of Condition to Peter McGraw, claims adjuster for the insurance company. Dr Walton stated that in his opinion Holcomb was not able to return to his previous employment with Low Temp but could return to another type of employment. He diagnosed Holcomb as having possible rheumatoid arthritis and suggested that he be retrained in another field.

On November 27, 1979, McGraw asked Dr. Walton for an impairment figure based on his findings and consulted with the Workers' Compensation Division before deciding to convert

Holcomb's benefits from temporary total to partial permanent disability. On that same day, McGraw sent a letter to Holcomb explaining the conversion of benefits and its implications. On December 18, 1979, Dr. Walton advised McGraw of a 10% impairment figure assuming Holcomb underwent corrective surgery on the cervical spine or neck region. Dr. Walton refused to perform the surgery because of doubts that Holcomb, an admitted alcoholic, had stopped drinking.

On December 27, 1979, McGraw wrote to Holcomb explaining that Dr. Walton had submitted a 10% partial permanent disability rating as compared to the body as a whole and that in order to receive partial permanent benefits Holcomb would need to sign a petition for final settlement of his claim. In his letter McGraw specifically mentioned that Holcomb should call him if he had any questions. Holcomb, who has a below average IQ, apparently took two or three days to study the letter with his girlfriend before going to McGraw's office to sign the petition on January 15, 1980. The final settlement, approved on February 5, 1980 is set out in full below:

Before the DIVISION OF WORKERS' COMPENSATION
Department of Labor and Industry
815 Front Street
Helena, Montana  59601

Jett Holcomb
_____
              Claimant

Low Temp Insulation                    PETITION FOR FINAL SETTLEMENT
_____
              Employer

Commercial Union Co.                   Case  ___2 79 10542 3___
_____
              Insurer

       The undersigned claimant was accidentally injured on ___January 25___
1979, while employed by ___Low Temp Insulation Co.___
an employer enrolled under Plan ___2___ of the Workers' Compensation Act.
The claim was filed and accepted for compensation and medical benefits.

       The total compensation paid amounts to $   4350.86

       The total medical and hospital benefits paid amounts to $  676.53

       The claimant suffered disability [emphasis added] as a result of the
accidental injury, and an agreement has been reached between the claimant
and the insurer regarding the amount of compensation due wherein the
claimant agrees to accept the sum of ___Forty Seven Hundred Dollars___
($ 4,700.00)
in a lump sum in final settlement which represents compensation for
__50__ weeks, and that further medical and hospital benefits are expressly
reserved by the claimant.

       The claimant hereby petitions the Administrator with the concurrence
of the ___Commercial Union Companies___ [Insurer-Employer] for approval
of a final settlement and that the case be finally settled
on the basis stated above. [Emphasis added.]   It is understood by the
claimant and the insurer that under the Workers' Compensation Act an order
approving this petition for final settlement may for good cause, be
rescinded, altered, or amended by the Division within (4) years from the
date this petition is approved.

                                   _____Jett Holcomb [signature]_____
                              Claimant

Witness:

_____Marilyn Michotte [signature]_____

       The ___Commercial Union Co___ hereby concurs with and joins in
the foregoing petition for final settlement.

       Dated _____1-15_____, 19 80
                                   Commercial Union Co._____

                              By _____P. J. McGraw/vh_____

4

Holcomb argues that McGraw did not adequately inform him of the extent of his disability in 1979 so as to enable him to reopen his case within four years of final settlement providing good cause was shown.

In the four years after final settlement, Holcomb worked sporadically at various construction jobs. In April, 1984, or approximately two months after the four year reopening period had expired, a neurosurgeon, Dr. Wood, performed the surgery on Holcomb's neck deemed necessary by Dr. Walton in 1979. Dr. Wood gave Holcomb a 10% disability rating after the surgery, the identical figure submitted by Dr. Walton to the insurance company in 1979. Holcomb then asked the insurance company to reopen his case. The hearing examiner rescinded the final settlement on the basis of constructive fraud and focused on Holcomb's lack of education and the possibility that he may not have comprehended the language in the petition for final settlement or the explanation of the petition by the claims adjuster, Mr. McGraw. The Workers' Compensation Court agreed that the insurance company's constructive fraud prevented the entering of a valid final settlement agreement and as a result the four year statute of limitations for reopening the case had not run on Holcomb.

The first issue is whether the Workers' Compensation Court had jurisdiction to rescind a final settlement more than four years after it was approved by the Workers' Compensation Division.

The jurisdictional statute applicable to final settlements is found at § 39-71-204, MCA.

> (1) Except as provided in subsection (2), the division shall have continuing jurisdiction over all its orders, decisions, and awards and may, at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter, or amend any such order, decision, or award made by it upon good cause appearing therefor.
>
> (2) The division or the workers' compensation judge shall not have power to rescind, alter, or amend any final

settlement or award of compensation more than 4 years after the same has been approved by the division. Rescinding, altering, or amending a final settlement within the 4-year period shall be by agreement between the claimant and the insurer. If the claimant and the insurer cannot agree, the dispute shall be considered a dispute for which the workers' compensation judge has jurisdiction to make a determination. Except as provided in 39-71-2908, the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any order approving a full and final compromise settlement of compensation.

(3) Any order, decision, or award rescinding, altering, or amending a prior order, decision, or award shall have the same effect as original orders or awards.

In Williams v. Industrial Accident Board (1939), 109 Mont. 235, 243, 97 P.2d 1115, 1118, we said:

[A]s officers, we act in a representative capacity and have such powers and only such as the law gives to us. The individual members of the defendant Board, [now the Workers' Compensation Division] like all other officers, may not lawfully act as their whim or caprice may dictate, but only in accordance with that authority with which the law clothes them. Any other doctrine is destructive of the fundamental principles of our whole system of government.

Subsection (1) of § 39-71-204, MCA, states that "except as provided in subsection (2), the division shall have continuing jurisdiction . . . " (Emphasis added.) Subsection (2) in turn, provides that "the division or the workers' compensation judge shall not have the power to rescind, alter, or amend any final settlement" more than four years after the approval of the settlement. (Emphasis added.)

In other words, the Workers' Compensation Court has jurisdiction to rescind a final settlement for a period of four years upon a showing of good cause after which time jurisdiction ceases to exist. In this case, Holcomb entered into a final settlement with Commercial Union Insurance effective February 5, 1980. He sought to reopen the settlement on May 31, 1984, more than four years after the final settlement order had been entered, claiming the

6

insurance adjuster failed to inform him of the extent of his disability at the time of final settlement.

We hold that pursuant to § 39-71-204, MCA, the Workers' Compensation Court had no authority or jurisdiction to rescind the final settlement. That court's jurisdiction expired on February 5, 1984, four years from the time of final settlement.

Because of our ruling on the first issue of jurisdiction, we deem it unnecessary to address the second issue.

The judgment rescinding the final settlement is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Hon. Jack L. Green, District
Judge, sitting in place of
Mr. Justice William E. Hunt, Sr.

7

Mr. Justice John C. Sheehy, dissenting:

P. J. McGraw is quick on the draw, and a high-paid insurance adjuster. Holcomb was sick, and a little bit thick, and any big words made him fluster.

"Impairment" is a word that when it is heard, its meaning is surely amorphous; and few lawyers can see that "disability" has a much different meaning for us. Lawyers, in fact, who construe the Act, are probably not aware of what might ensue to those workers who take words that they should beware of. Here Holcomb signed, as one who's born blind, the petition McGraw had prepared. With his knowledge gap he walked into the trap which his untutored girl-friend had shared.

Constructive fraud is not something odd. It springs from a clear legal duty to be candid and open, and not try to rope in, a man in a deal that is sooty. It is founded on trust and good trustee must avoid all taint of deception. What Jett Holcomb saw in P. J. McGraw was a trust in the law's perception.

To the Workers' Court credit it may now be said it saw through the insurer's oration, and promptly recorded a fraud that was sordid as a bar to the law's limitation. The Workers' Court found that the fraud gave it ground to allow Holcomb's suit though belated. But this Court, intent that the law not be bent, rejects what the Workers' Court stated.

The lesson to learn for those who discern from studies of what we are doing is that most of this Court will haply consort with fraud if a worker is suing. Gone is the day when a lawyer could say that we follow the old legal chant,

one we derive from an old Latin jive, <u>Fraus</u> <u>et</u> <u>jus</u> <u>nunquam</u> <u>cohabitant</u>.  (Fraud and justice do not dwell together.)

_John C. Shelby_
Justice